HENRY L. WILLIAMS v. L. R. TAYLOR, DISTRICT CLERK.

No. 3466.

1. **Control of Courts Against Unconstitutional Statutes.**—The Constitution is the superior law; and when attempted legislation conflicts with its restrictions and purports to make a law which is thereby prohibited, it is clearly the duty of the courts to declare such legislation void and to give it no effect.

2. **Same—Distinction Between Laws Prohibited and Those Enacted in Irregular Manner.**—It would seem that there should be a broad distinction between the authority to declare an act of the Legislature void for want of power to pass the law in any manner and the jurisdiction to avoid a statute upon the ground that some provision of the Constitution as to the mode of its passage had not been observed. A power in the courts to avoid a statute for irregularity on part of the Legislature in enacting it should clearly appear before its exercise.

3. **Journals of Senate and House of Representatives.**—In the absence of some declaration in the Constitution showing that it was intended that the Journals of the two houses should have a conclusive effect in determining whether the acts of the Legislature have properly ripened into laws, we should hesitate long before conceding to them such effect by remote implication.

4. **Authenticity of Statutes.**—Our Constitution provides, that after the passage of a bill it shall be signed by the presiding officer of each house in the presence of the house; and we are of opinion that when a bill has been so signed and has been submitted to and approved by the Governor it was intended that it should afford conclusive evidence that the act had been passed in the manner required by the Constitution.

5. **Same—Journals.**—We can not look to the Journals of the Senate and House of Representatives in order to invalidate a statute signed by the President of the Senate and the Speaker of the House, and approved by the Governor.

6. **Case in Judgment—Mandamus.**—By act of the Legislature the Forty-eighth Judicial District was created, with terms beginning first Mondays in February and October of each year. On a subsequent day of same session an amendment was passed prescribing a third term, beginning second Monday in May. A petition was filed with the clerk of the court with request that citation issue returnable to said May term of the court, it being the next term. The clerk refused. The plaintiff sought by mandamus to compel the issuance. The trial court refused the writ, and on appeal his action was argued to be correct, because (1) the Journal of the Senate of the Twenty-second Legislature, in which said bill originated, showed that it had not been presented and referred to and reported from a committee at least three days before the final adjournment of the Legislature; and (2) the necessity for the suspension of the rule requiring

bills to be read on three several days in each house was not sufficiently stated in said act. *Held*, that the Journals can not invalidate an enrolled bill duly signed and approved; and the peremptory writ should have been awarded. So ordered on appeal.

APPEAL from Tarrant.　　Tried below before Hon. N. A. STEDMAN. The opinion states the case.

*Bowlin & Bowlin*, for appellant.—1. It is not competent for the courts to look to the Journals of the Legislature to impeach an act otherwise constitutional, which appears on its face to have been regularly passed and promulgated as a law. Blessing v. Galveston, 42 Texas, 641; Const. 1876, art. 2, sec. 1; Id., art. 3, sec. 37; Rev. Stats., arts. 2245, 2250; State v. Swift, 10 Nev., 176; 21 Am. Rep., 721; State v. Rogers, 10 Nev., 250; 21 Am. Rep., 738; Sherman v. Story, 30 Cal., 253; 89 Am. Dec., 93; People v. Burt, 43 Cal., 560; State v. Glenn, 18 Nev., 34; Railway v. Governor, 23 Mo., 353; 66 Am. Dec., 673; Brodnax v. Groom, 64 N. C., 244; Lottery Co. v. Richoux, 23 La. Ann., 743; Snow v. Buck, 40 Miss., 268; Evans v. Brown, 30 Ind., 514; 95 Am. Dec., 710; Duncombe v. Prindle, 12 Iowa, 1; Speer v. Plank Road Co., 22 Pa. St., 376; People v. Comm., 54 N. Y., 276; Pangborn v. Young, 32 N. J. Law, 29; 5 Am. Law Reg., 676; Jones v. Jones, 12 Pa. St., 350; 51 Am. Dec. 616, and note, where most of the cases are reviewed.

2. The courts will not look to the Journals of the Legislature to impeach an act which in itself appears to have been regularly passed and promulgated as a law, unless it is to some matter which the Constitution affirmatively and in express terms requires to be entered upon the journals. Railway v. Odum, 53 Texas, 351; State v. Goowin, 69 Texas, 55; Ewing v. Dodson (Texas), 16 S. W. Rep., p. 1000; Const. 1876, art. 3, secs. 12, 32, 37, 38, 39; Id., art. 4, sec. 14; Id., art. 3, secs. 17, 22, 34; Ry. Tax Com. v. Railway, 8 Sawyer, 238, 292; Sherman v. Story, 30 Cal., 253; Jones v. Jones, 51 Am. Dec., 616, and note; Railway v. Governor, 23 Mo., 353; Hunt v. State, 22 Texas Ct. App., 396; Spangler v. Jacoby, 14 Ill., 297; 58 Am. Dec., 571, and note.

3. The entries from the Journal of the Senate in evidence sufficiently show that the act in question was presented in the Legislature and referred to and reported upon by a committee for at least three legislative days before final adjournment. The entries in question show that the bill was presented on April 11 and referred to a committee. The committee's report was dated the 11th, but appears from the journal to have been reported to the Senate on the 13th, the day of adjournment. Blessing v. Galveston, 42 Texas, 641; Day Company v. State, 68 Texas, 527.

4. The third error assigned by appellant relates to the action of the court in holding insufficient the recital in the act of the reason for suspending the rule to read same on three several days. The recital is sufficient, being in substantial compliance with the Constitution. Acts

22 Leg., 179; Day Co. v. The State, 68 Texas, 527; Const. 1876, art. 3, sec. 32; Miller v. The State, 3 Ohio St., 483.

*Seth Stewart, Hyde Jennings,* and *F. W. Ball,* for appellee.—1. It was competent for the court to go beyond the enrolled bill and consult the Journal of the Senate to determine the validity or invalidity of the act, though it might appear on its face to be valid.    Blessing v. City of Galveston, 42 Texas, 641; Railway v. Odum, 53 Texas, 343; Ewing v. Duncan, 3 Texas Ct. App., 233; Cool. Const. Lim., p. 163; Ottawa v. Perkins, 94 U. S., 260; Osburn v. Stanley, 5 W. Va., 85; Attorney-General v. Platt, 16 Am. Rep., 647; Gardenor v. The Collector, 6 Wall., 499; Berry v. Railway, 20 Am. Rep., 69; Ryan v. Lynch, 68 Ill., 160; Jones v. Hutchinson, 43 Ala., 721; Gorman v. Fordyce, 20 Ohio St., 1; People v. Mahoney, 13 Mich., 481; Bank v. Commonwealth, 2 Pa. St., 446; McCullock v. State, 11 Ind., 430; People v. Supervisors of Chenango, 8 N. Y., 317.

2.    The mere silence or failure of the Journals to show that all constitutional requirements have been observed in the passage of an act will not render the act void, for in such a case the court will presume the provisions of the Constitution to have been complied with; but otherwise, where the Journals show affirmatively that the act has been passed in violation of the Constitution.    Blessing v. City of Galveston, 42 Texas, 641; Prescot v. Trustees, 19 Ill., 324; Cool. Const. Lim., p. 164.

3.    Constitutional provisions are to be construed as mandatory, and not otherwise.    Section 37, article 3, of the Constitution of the State of Texas declares: "No bill shall be passed which has not been presented and referred to and reported from a committee at least three days before the final adjournment of the Legislature."    The Journal of the Senate shows that the bill under consideration was presented and referred to a committee on Saturday, the 11th day of April, 1891; that it was reported favorably by the committee on Monday, the 13th day of April, 1891, on which day the Legislature adjourned sine die, as shown by said Journal.    3 Texas Ct. App., 233; Cool. Const. Lim., pp. 74, 94–98, 181; State v. Johnson, 26 Ark., 281; Walcott v. Wigton, 7 Ind., 44; People v. Purdy, 2 Hill, 31; Township v. Black, 5 Ind., 566; People v. Lawrence, 36 Barb., 177.

4.    Neither the introduction of the bill on the 11th nor the committee's report thereon on the 13th day of April, 1891 (the day on which the Legislature adjourned), was three days before the final adjournment of the Legislature, as required by the Constitution.    On computation of time, see Hyde v. White, 24 Texas, 138; Suth. on Stat. Con., p, 135, sec. 3; Cool. Const. Lim., p. 184; Manufacturing Co. v. Haight, 39 Cal., 540; Price v. Whitman, 8 Cal., 412; 45 N. H. 607.

5.    The provision of the Constitution (art. 3, sec. 32) which requires that "No bill shall have the force of a law, etc., but in cases of

imperative public necessity" (which necessity shall be stated in the preamble or in the body of the bill), is mandatory, and the statement in the last section of the bill, that "an emergency" existed, was not a sufficient compliance with the Constitution. It is insisted by counsel for appellant that the word "emergency" is equivalent or synonymous with "imperative public necessity." We contend to the contrary. While, according to the lexicographers, said words might be regarded as synonymous, yet the Constitution itself discloses that they are intended to convey different ideas. Section 39 of article 3 prescribes, that an act shall not take immediate effect unless in case of "an emergency"—not an "imperative" emergency, nor a "public" emergency, but a simple "emergency." Section 32 says that the reading on three several days shall only be dispensed with in case of an imperative public necessity. The necessity must not only be imperative, but it must be public—i. e., it must affect the whole body of the State.

GAINES, ASSOCIATE JUSTICE.—This is presented as an agreed case. Appellant filed a petition in the District Court of the Forty-eighth Judicial District of Tarrant County against Rush Loyd and others in an action of trespass to try title, and demanded of appellee, as clerk of that court, that he should issue citation to defendants returnable to a term of the court alleged to begin on the second Monday in May, 1892. The clerk refused to make the citation returnable as requested, and this suit was brought to compel him to do so. An alternative writ of mandamus was issued, but upon final hearing the peremptory writ was refused and the suit was dismissed.

The Forty-eighth Judicial District of the State was created by an act of the Legislature, which was approved February 11, 1891. That act provided, that the regular terms of the court should be held on the second Mondays in February and October of each year; but at a subsequent day of the same session of the Legislature another act was passed, which, in addition to the terms formerly prescribed, provided for a third, to begin on the second Monday in May. The appellee claims that this latter act never became a law, and upon the decision of this question the determination of this suit depends. The grounds upon which the validity of the act is assailed are stated as follows in the agreement upon which the case is submitted to this court:

"1. That the Journals of the Senate of the Twenty-second Legislature, in which said bill originated, showed that it had not been presented and referred to and reported from a committee at least three days before the final adjournment of the Legislature.

"2. That the necessity for the suspension of the rule requiring bills to be read on three several days in each house was not sufficiently stated in said act."

The power of the courts, under the form of government common to the States of this Union, to declare void an act of the Legislature, on the ground that such legislation is prohibited by the Constitution of the State, was questioned at an early day in the history of our jurisprudence; but that the power exists is now settled beyond controversy. As to the authority of the courts in such cases, there should never have been any serious question. In passing a law, the Legislature acts under the authority conferred by a written Constitution; and whether or not it has exceeded its authority in the passage of any particular act is a judicial question. The Constitution is the superior law; and when attempted legislation conflicts with its restrictions and purports to make a law, which is thereby prohibited, it is clearly the duty of the courts to declare such legislation void and to give it no effect. In every such case the vice of the enactment appears upon its face, and no one who takes the proper steps to inform himself as to the law need be misled by it.

But in addition to certain laws which the Constitutions of most of our States in terms more or less explicit prohibit their respective Legislatures from making, it has become customary to prescribe in the fundamental law certain rules of procedure by which the two bodies which compose the Legislature are to be guided in framing and passing statutes. Such is the Constitution of our own State; and it is for the supposed violation of these rules of procedure that the act in question in this case is claimed to be void. It would seem upon first blush that there should be a broad distinction between the authority to declare an act of the Legislature void for want of power to pass the law in any manner and the jurisdiction to annul a statute upon the ground that some provision of the Constitution as to the mode of its passage has not been observed. The same distinction exists with reference to the judgments of the courts themselves. If when the validity of a judgment is called in question it appear that the court was without jurisdiction—that is to say, that it had no power to hear and determine the case and to render any judgment in the premises—the judgment will be held void in any suit in which its validity may be involved. But if the court have jurisdiction, no other court would have power in any collateral proceeding to revise its judgment, however irregular its proceedings may have been. Much stronger reasons exist why we should hesitate to annul the action of the Legislature upon grounds of irregularity in its procedure than exist when we are asked to declare void the judgment of a court. Our Constitution devolves the executive, legislative, and judicial functions of the government each upon a separate magistracy, and declares, that no person or collection of persons attached to either of the departments shall exercise the functions belonging to either of the others. Const. 1876, art 2, sec. 1. The courts certainly have no power to reverse or amend the statutes passed

by the Legislature; and we think they should ponder well before undertaking to revise the proceedings of either house of the Legislature, and to declare its action void merely on account of its failure to observe some rule of procedure prescribed in the Constitution.

That it was competent to confer such a power upon the courts by the organic law we see no good reason to doubt. But when we consider the consequences of the exercise of such power we think the authority should very plainly appear in the Constitution before the courts should undertake to exercise it. In those tribunals in which it has been held that the Journals of the two branches of the Legislature could be looked to in order to determine whether or not the requirements of the Constitution had been observed in passing a statute with a view to test its validity, the decision has been placed upon the ground that the Constitution required each house to keep a journal of its proceedings; and that the object of that requirement is to provide evidence by which the courts may determine whether the provisions of the Constitution have been complied with or not. The Constitution of our State does not declare such to be the object of requiring the journals to be kept, and we know of none that does. On the contrary, we think the more obvious purpose of the provision was to preserve a record of the action of the individual members of the house, to the end that their constituents should fix upon them a proper responsibility for their conduct. In the absence of some declaration or language in the Constitution showing that it was intended that the Journals of the two houses should have a conclusive effect in determining whether the acts of the Legislature have properly ripened into laws, we should hesitate long before conceding to them such an effect by remote implications.

No one can allege ignorance of the law as an excuse for his conduct. He must determine the law for himself and act upon it at his peril. The policy of modern legislation is not only to declare the statutory law with clearness and certainty, and to promulgate it with the greatest publicity, but also to stamp upon each statute evidence of unquestioned authenticity. That evidence at common law was the enrolled bill, and behind it the courts were not permitted to go. Rex v. Arundel, Hob., 110. Our Constitution provides, that after the passage of a bill it shall be signed by the presiding officer of each house in presence of the house; and we are of the opinion that when a bill has been so signed and has been submitted to and approved by the Governor, it was intended that it should afford conclusive evidence that the act had been passed in the manner required by the Constitution. Such being the rule of the common law, we think, in the absence of something in the Constitution expressly showing a contrary intention, it is fair to presume that it was intended that the same rule should prevail in this State. There is no provision of the Constitution indicating in any direct manner such contrary intention; and the fact that it is provided

that journals shall be kept and that certain things should be entered therein we think insufficient to show any such purpose.

There exists, as we have seen, another very satisfactory reason for these provisions, and in view of the consequences which are likely to flow from such a rule we are of the opinion they afford no sufficient ground for holding that they were intended. to furnish a record by which the validity of the statutes should be tested. As was held in Blessing v. Galveston, 42 Texas, 641, whether a statute be valid or not is a question of law to be determined by the court from such sources of information as it may see proper to resort to; and is not to be decided as a matter of fact upon such evidence as may be adduced. If invalid, it can not be made good by estoppel, acquiescence, or any lapse of time. If its validity is to be tested by the Journals, we see no reason why the courts should not look to them; and there could never be any assurance of the validity of any statute until the Journals had been examined and it had been found that the procedure prescribed in the Constitution had been followed. It seems to us that such a rule would lead to inextricable confusion. It is probable that there are few titles to land in this State which do not depend upon some statutory enactment. Let us suppose that some statute for the granting of land certificates, or for the acknowledgment and recording of deeds, or for fixing liens, or for the sale of lands under execution, or even fixing the terms of holding the courts, should when tested by the Journals of the two houses of the Legislature be found not to have been passed in strict compliance with the procedure provided for in the Constitution in force. at the time of its passage. If the Journals are to control, as soon as the court's attention should be called to the fact it would be constrained to hold that the statute was void and that all titles dependent upon it should fall to the ground. From our knowledge of the manner in which the Journals of the Legislature are ordinarily made up, the supposition is by no means a violent one, and hence we conclude that a rule fraught with such consequences was never intended. In order to maintain that the Journals should prevail over an enrolled bill, duly signed. and approved, it should be held that they are a more certain and reliable record of what occurred during the progress of the bill than the signature of the presiding officers, which the Constitution prescribes as the evidence of its passage. Such can hardly be said to be the fact. It should not be assumed that the highest officer in the body, who is sworn to support the Constitution, and upon whom is devolved the important function of finally attesting the bill in the presence of the house over which he presides, will not bring to the discharge of that duty that judgment and circumspection which the occasion demands. The Journals are the work of the clerks, perhaps hastily performed, and as the official copies in this State, in some instances at least, will show, their reading is frequently dispensed with by vote. When such is the case, the Jour-

nals are merely the work of the recording clerk, and even when read there is no assurance that the reading has led to the correction of every error.

Upon the question under discussion there is a very decided conflict of authority in the courts of the different States of our Union. We shall not consider them here in detail. They are ably reviewed in the case of The State v. Swift, 10 Nevada, 176. The opinion in that case was delivered in 1875, and we concur in the conclusion there announced, that at that date the decided weight of authority was in favor of the rule that generally the enrolled bill as signed and approved should be taken as conclusive evidence of the law. The tendency of the later decisions is to uphold the contrary rule. See Suth. Stat. Con., 44, and cases cited. In addition to the case last cited, we call attention to the very able opinions in the cases of Pangborn v. Young, 32 New Jersey Law, 29; Railway v. The Governor, 23 Missouri, 353.

The question is not a new one in this court. When the Commission of Appeals, which was appointed under the Act of March 30, 1887, assembled at Tyler to enter upon their duties, a question was suggested as to the validity of the act, by reason of the fact that the Journals showed that an amendment had passed in one house which was not incorporated in the enrolled bill. We felt it our duty to determine the question before referring any cases to the commission. Our conclusion was, that the bill as signed by the President of the Senate and the Speaker of the House and approved by the Governor was conclusive evidence of the law, and that the act was valid. The question subsequently came before our Court of Appeals and was decided in the same way. Ex Parte Tipton, 28 Texas Ct. App., 438. The well considered opinion in that case fully accords with our views.

Our conclusion upon the point that we can not look to the Journals in order to invalidate the statute is decisive of both questions presented by this appeal. The last section of the act under consideration would indicate, that it was intended to pass the bill under a suspension of the rules as "an imperative public necessity." Without looking to the Journals we can not say that the act was not regularly passed without suspending the rules, and therefore we need not decide whether the language used in the third section was sufficient to have authorized such suspension or not.

In Ewing v. Duncan, 16 Southwestern Reporter, 1000, the question was not whether the bill had passed, but whether it had been carried by a sufficient majority to put it into immediate effect. The signatures of the presiding officers and the approval of the Governor attested the passage of the act, but did not determine that it had taken effect from the date of its passage. There being no method of attesting the fact, that a bill which purports to take effect from its passage has received

the required two-thirds majority, we deemed the Journals the best evidence upon the question, and looked to them for that purpose only.

For the reasons given, the judgment is reversed and here rendered for appellant, awarding the peremptory writ of mandamus as prayed for.

*Reversed and rendered.*

Delivered March 11, 1892.