F. B. JACKSON, JR. V. J. H. WALKER, LAND COMMISSIONER.

No. 6053.   Decided April 21, 1932.
(49 S. W., 2d Series, 693.)

304

*Coke R. Stevenson,* of Junction, and *R. J. Long,* of Wichita Falls, for relator.

Chapter 22, section 1, Acts 3rd c. s., 41st Leg., p. 526, is unconstitutional and void, in so far as it applies to "river beds and channels," for the reason that this subject was not specifically submitted to the Legislature at the 3rd Called Session, 41st Legislature, in accordance with article 3, section 40, and article 4, section 8, of the State Constitution. Baldwin v. State, 21 Texas App., 591, 3 S. W., 109; Brown v. State, 32 Texas Crim. Rep., 132, 22 S. W., 596; Long v. State, 58 Texas Crim. Rep., 209, 127 S. W., 208; Ex parte Wolters, 64 Texas Crim. Rep., 238, 144 S. W., 531; Casino v. State, 34 S. W., 769.

*James V. Allred,* Attorney General, and *Geo. T. Wilson* and *R. W. Yarborough,* Assistants Attorney General, for respondent.

*R. J. Randolph,* of Austin, and *Thomas B. Love,* of Dallas, as amicus curiae.

Even though it should be held that the special message of the Governor may be considered in connection with the act to determine whether the subject of the act was within the general subject of the message, then it is submitted that the gen-

eral subject of the message in this case was the State's minerals, and for that reasons included minerals, particularly oil and gas, in river beds. Article III, section 40, Texas Constitution; chapter 22, Acts Third Called Session, 41st Legislature; Brown v. State, 32 Texas Crim. Rep., 132, 22 S. W., 601; Baldwin v. State, 21 Texas App., 591, 3 S. W., 110; Thompson v. State, 20 Ala., 54; Griffin v. Thomas, 86 Okla., 70; Lifkin's Petition, 223 Pa. St. Rep., 456; Commonwealth v. Moir, 199 Pa. St. Rep., 534; Penn. Ry. Co. v. Riblet, 66 Pa. St. Rep., 164.

MR. JUDGE SHARP of the Commission delivered the opinion for the court.

This is an original proceeding filed by relator, F. B. Jackson, Jr., against J. H. Walker, Commission of the General Land Office, asking that a writ of mandamus be awarded commanding J. H. Walker, as General Land Commissioner, to approve and file relator's applications, field notes, etc., with reference to his application to prospect for oil and gas on a certain portion of the bed of Sabine River in Gregg county, Texas, and to grant him the permits requested in the application in the manner provided by law. Relator's application was made under and in accordance with the provisions of chapter 83 of the Acts of 1917, Regular Session, an act approved March 16, 1917, and all amendatory acts thereto.

Respondent rejected the application for the reason that the area sought by relator was not subject to permit by reason of the enactment by the Legislature of chapter 22, Acts of the 3rd Called Session 41st Legislature, known as Senate Bill No. 20, which withdrew river beds from the operation of the mineral law. The pertinent parts of this act read as follows:

"Section 1. That the surface and the minerals therein of all river beds and channels, and of all unsurveyed public free school lands, and portions of the same, in the State of Texas, are hereby withdrawn from sale or lease until otherwise provided by law.

"Section 1a. Provided however that such withdrawal from sale and lease of unsurveyed public school land shall not apply in cases where application of inquiry has been heretofore made therefor and on which suit is now pending."

It is admitted that the Sabine River is a navigable stream within the meaning of the law in all that portion thereof described in relator's applications and that in this area none of the survey lines of abutting surveys cross the river.

Relator frankly admits that if Chapter 22, supra, is valid, that his claim was properly rejected by the respondent. How-

ever, he claims that Section 1, and all parts thereof with reference to river beds and channels, is unconstitutional, upon the grounds: (1) Because this subject of legislation was not specifically submitted by the Governor to the Legislature at the special session thereof, at which the same was passed; and (2) because it was not approved and filed by the Governor, as required by the Constitution to make it a valid law.

Counsel for relator urge that the Governor, in his proclamation, calling the 3rd Special Session of the 41st Legislature, did not submit for their consideration the question of taking river beds and channels off the market as was attempted to be done in Chapter 22. Therefore, the enactment of that Act was in violation of Article 3, Section 40, of the Constitution, which reads as follows:

"When the Legislature shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session, or presented to them by the Governor; and no such session shall be of longer duration than thirty days."

In the construction of the provision of the Constitution just quoted, it has been held that it is not contemplated that the Governor shall state the details of legislation in his proclamation convening the legislature in special session but only in a general way present the subjects for legislation. Brown v. State, 32 Texas Crim. Rep., 132, 22 S. W., 596; Ex parte Fulton, 86 Texas Crim. Rep., 149, 215 S. W., 331; Long v. State, 58 Texas Crim. Rep., 209, 127 S. W., 208.

However, it is not necessary to decide whether or not the Governor, in his proclamation convening the 3rd Called Special Session of the Legislature, or thereafter during such session, submitted to them this precise subject for legislation. The Act in controversy is regular upon its face. It is regularly and properly signed by the president of the senate and the speaker of the house of representatives and duly authenticated by the officers of each house. It also bears the date when received in the Governor's office and in the office of the Secretary of State. No question is raised about these facts.

The question whether the validity of a statute, duly certified, approved, enrolled and deposited in the office of the Secretary of State, can be impeached by a resort to the proclamation of the Governor or to the journals of the Legislature, has been long controverted and the decisions upon this question are conflicting. In several of the states of this Union it is held that the courts will go behind the authenticated statute and

ascertain from the proclamation of the Governor and the journals of both houses of the Legislature as to whether or not the law is valid. This is a very interesting question, but to review the decisions of the various courts bearing upon this question would prolong this opinion beyond its proper length.

■ The rule has long been established in this State that a duly authenticated, approved and enrolled statute imports absolute verity and is conclusive that the Act was passed in every respect as designated by the Constitution, and that resort may not be had to the proclamation of the Governor and to the journals of the two houses to invalidate the law. This rule has been followed by the various courts of this state. Williams v. Taylor, 83 Texas, 667, 19 S. W., 156; Blessing v. City of Galveston, 42 Texas, 642; Usener v. State, 8 Texas App., 177; Ex parte Tipton, 28 Texas Crim. Rep., 443, 13 S. W., 610, 8 L. R. A., 326; McLane v. Paschal, 8 Texas Civ. App., 401, 28 S. W., 713; Baldwin v. State, 21 Texas App., 593, 3 S. W., 110; Day Land, etc. Co. v. State, 68 Texas, 526, 4 S. W., 865; El Paso & S. W. Ry. v. Foth, 45 Texas Civ. App., 284, 100 S. W., 176; Houston & T. C. Ry. v. Stuart, 48 S. W., 799; Presidio County v. City Natl. Bank, 20 Texas Civ. App., 511, 44 S. W. 1069 (writ denied); State v. Larkin, 41 Texas Civ. App., 264, 90 S. W., 912 (writ denied); Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W., 759; Moller v. Galveston (Civ. App.), 57 S. W., 1120; Ball v. Presidio County (Civ. App.), 27 S. W., 702; Oak Cliff v. State (Civ. App.), 77 S. W., 26; Teem v. State, 79 Texas Crim. Rep., 285, 183 S. W., 1144. The Supreme Court of the United States has also sustained this rule. Field v. Clark, 143 U. S., 649, 12 Sup. Ct. Rep., 495, 36 L. Ed., 294; Lyons v. Woods, 153 U. S., 649, 14 Sup. Ct. Rep., 859, 38 L. Ed., 854. This doctrine is supported by the authoritative decisions of the following states: California, Indiana, Kentucky, Mississippi, Montana, Nevada, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, South Dakota, Utah, and Washington. 38 Cyc., 972 and note 7.

The case of Casino v. State, 34 S. W., 769, is cited as authority that the Constitution prohibits the Legislature in special session from legislating upon subjects not presented to it by the Governor in his proclamation or thereafter submitted during such session. This case does sustain that contention, but it did not reach the Supreme Court and therefore was not approved by this court. The courts of this State has not followed the rule announced in that opinion. On the contrary, they have held the very opposite. That case does not announce

the rule which prevails in this State and is not an authoritative decision upon this question.

It will be observed that the rule announced by the courts that a law, regular upon its face, could not be impeached by resorting to the proclamation of the Governor or to the journals of the two houses of the Legislature, has been in force in this State for more than fifty years. It has become the public policy of this State and has been recognized by the three departments of our state government. It is well known that by reason of this public policy many laws have been enacted and are now in force, that rights have been established and acquired thereunder, and in the face of this long custom or rule existing in this State to hold now to the contrary, would certainly prove disastrous and would create a condition in the affairs of our State Government that would almost be irreparable.

But it is contended that the Act was not approved by the Governor and therefore did not become a law. Article 4, Section 14, of the Constitution, provides that every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval. If he approves, he shall sign it, but if not he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon its journals and proceed to reconsider it. If after such reconsideration it is again passed in both houses by two-thirds of the members present it shall become a law. Section 14, Article 4, further provides "if any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Legislature, by its adjournment, prevents its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after such adjournment."

It is undisputed that this bill was filed in the Governor's office on July 17, 1929, and that the adjournment of the Legislature prevented its return to that body, if disapproved by the Governor, and that it was filed, together with the statement of the Governor, in the office of the Secretary of State on August 9, 1929.

It is further contended that the act in controversy was not approved by the Governor when filed by him in the office of the Secretary of State and therefore it did not become a law.

It is true that the Governor was not satisfied with the act as passed by the Legislature and it did not meet the views expressed by him to the Legislature in his proclamation, but it is shown from his reasons attached to the act when filed in the office of the Secretary of State that it contains some merit and that he hoped the Legislature at its next session would amend the law. Governor Dan Moody, mindful of the importance of conserving the mineral rights for the people of this State, and realizing that the law was inadequate, reviewed the need of legislation upon this subject. If it would not prolong this opinion to an unnecesary length, we would include the vigorous statements made by the Governor attached to the bill when filed in the office of the Secretary of State. We content ourselves by quoting the conclusions of the Governor, which read as follows:

"If I thought the Legislature would allow this bill to remain the law indefinitely, I would veto it. I feel, however, that the Legislature will avail of the opportunity at its next session to correct this law.

"In permitting the bill·to become a law I do so with the faith that the Legislature will not neglect the opportunity at its next session to protect the State and the School Fund from possible loss by reason of drainage of oil from vacancies and river beds by contiguous land owners. This can only be done by the passage of a proper law for the development and disposition of such properties by the State.

"I permit it to become a law to give the State protection from losses it might sustain should vacancies be disclosed by the re-survey of the University Land.

"No one can foretell what vacancies may develop in the University Land, and if I should veto this bill any which may develop might be sold under the Relinquishment Act, which means that the State would only get one-half of the royalties from mineral development, when it should receive one hundred per cent of the mineral estate. I believe it can be counted, though, that the representatives of the people, as the conservators of the public fund, will correct the situation which they have created by making this bill too all embracing. Had the Legislature merely withdrawn from the market any vacancies that may develop in the University Lands, as I suggested, there would be no question about the bill. The Legislature simply went too far, in my judgment, and will have to correct this bill at its very next session."

■ When we construe the language used by Governor Moody

in connection with this bill, the conclusion is inevitable that what he did and said was tantamount to an approval of the Act. Certainly, it cannot be said that the language used by him was intended as a veto thereof. Therefore, it became a valid law.

The question as to whether an act properly passed by the Legislature and duly authenticated, as required by law, not embraced in the proclamation of the Governor or thereafter submitted during such session, and filed in the Governor's office and by him in turn filed in the office of Secretary of State without his approval or disapproval, is valid or invalid, is not before us for decision, and upon that question we express no opinion.

The relator's application for mandamus should be refused.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.