CITY OF HOUSTON v. JAMES V. ALLRED, ATTORNEY GENERAL, ET AL.

No. 6686. Decided May 2, 1934.
(71 S. W., 2d Series, 257.)

*R. R. Lewis,* City Attorney, of Houston, *Geo. D. Neal* and *Wm. M. Holland,* all of Houston, for relator.

The owners of the 1926 issue of bonds are necessary parties under the doctrne of "virtual representation." 28 Tex. Jur., 521, par. 6; 20 R. C. L., 669, par. 9; Davis v. Hudgins, 225 S. W., 73; Felton v. K. C. M. & O. Ry. Co., 143 S. W., 650; Dallas v. Armour & Co., 216 S. W., 222; Wallace v. Adams, 204 U. S., 415.

Under provisions of R. S., 1925, Arts. 1111 to 1114, as amended by S. B. 334, Acts of 1933, and other applicable statutes (Art. 1109a as amended) relator has ample authority, power and right to borrow money payable solely out of the income from its water system, without submitting the question to a vote of the people, as contemplated by Article 1112 of the Revised Statutes of 1925. City of Raymondville v. McCann, 54 S. W. (2d) 1049; American Surety Co. of N. Y. v. Axtell Co., 36 S. W. (2d) 717; Farmers & Mechanics Natl. Bank v. Hanks, 104 Texas, 320, 137 S. W., 1120; Hess & Skinner Eng. Co. v. Turney, 109 Texas, 208, 203 S. W., 593.

Where cities having a population of more than 290,000 inhabitants have been authorized by an act of the Legislature to make improvements on its water system and to issue bonds and notes for that purpose without the same being authorized

by a majority vote of the people, said law is a general and not a special law. City of Fort Worth v. Bobbitt, 121 Texas, 14, 41 S. W. (2d) 228; Cameron v. City of Waco, 8 S. W. (2d) 249; State v. Stuht, 52 Neb., 209, 71 N. W., 941.

Law passed by special session of Legislature in proper form, duly signed and approved by the officers of the Legislature aud the Governor, is a valid law notwithstanding it was not submitted in the Governor's proclamation. Jackson v. Walker, 121 Texas, 303, 49 S. W. (2d) 693.

The issuance of bonds against the net earning of the water system of the City of Houston before a previous outstanding bond issue pledging the same security has been paid is not prohibited by Article 1113 nor Article 1118a, as amended, nor Article 1109a, as amended, of the Revised Statutes of 1925. Neither does it impair the obligations of contracts. Beard v. Marshall, 32 S. W. (2d) 496; Cannon's Admr. v. Vaughan, 12 Texas, 399; Connally v. Continental Southland S. & L. Assn., 121 Texas, 565, 51 S. W. (2d) 293; Edwards v. Morton, 92 Texas, 152, 46 S. W., 792; Gaddy v. First Natl. Bank of Beaumont, 283 S. W., 277; Rector v. United States, 92 U. S., 698, 12 Sup. Ct. Rep., 511.

Where the City of Houston proposes to issue water works revenue bonds to be sold to a Federal agency, and the said city has not been damaged, either to its public or private property, by reason of a tropical storm during the year 1933, the provisions of Senate Bill No. 70 passed by the 43rd Legislature at its first called session requiring an affirmative authorization by a majority vote of the qualified voters of said city before bonds may be issued has no application to the proposed bonds to be issued by the City of Houston. International & G. N. R. R. Co. v. Bergman, 64 S. W., 999; 15 R. C. L., 1092.

*James V. Allred,* Attorney General, *Pat Dougherty,* Assistant Attorney General, *Huggins, Kayser & Liddell,* of Houston, for respondents.

*R. R. Reed,* of Houston, filed argument as amicus curiae.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding instituted by the City of Houston, Texas, as relator, against Honorable James V. Allred, Attorney General of Texas, as respondent, to compel him to approve the transcript relating to the issuance of $2,-502,000.00 worth of City of Houston Water Works Revenue Bonds. James W. and Henry M. Rockwell, individually, and

as independent executors of the J. M. Rockwell estate, and J. H. Pittman and E. D. Holt are made parties as co-respondents. The presence herein of the co-respondents will be explained later.

Relator is a Home Rule City duly incorporated under the laws of this State. It also operates under a special charter duly adopted. Relator has a population of more than 290,000 inhabitants according to the last preceding Federal Census and owns and operates its own water system and gas system.

It appears that relator, by ordinance duly passed, adopted and approved on November 8, 1933, authorized the issuance of these bonds in the total amount above stated. They draw four per cent interest per annum, and the principal is payable at the rate of $84,000.00 per year, beginning November 8, 1934, and ending November 8, 1963. They are secured by a deed of trust on the excess or net earnings of the water works system over and above what is required to pay operating expenses, and the annual sinking fund and interest due on a prior issue of water works revenue bonds issued in 1926. These bonds can never be a debt or claim against the tax funds of the relator, but are secured only by the revenues of the water system above mentioned.

In issuing these bonds the city, by ordinance, purports to act under Article 1109a, R. C. S., 1925, as amended and re-enacted by H. B. 212, ch. 36, p. 113, Acts First Called Session, 43rd Legislature, 1933, and under other statutes, including Articles 1111 to 1114, R. C. S., 1925, and under ch. 314, p. 783, Acts Regular Session, 42nd Legislature, 1931, which Act was amended so as to add Section 2a, by H. B. 810, ch. 51, Acts Regular Session, 43rd Legislature, 1933. Ch. 314, Acts 42nd Legislature, as amended, supra, is carried as Article 1118a, Vernon's R. C. S., 1933 Pocket Supplement. It will be noted in this connection that Section 2a as carried in the 1933 pocket supplement has been amended by H. B. 810, ch. 53, Acts Regular Session, 43rd Legislature. The effect of Section 2a as it now exists is to exempt cities and towns acting under Article 1118a, supra, from the provisions of H. B. 312, ch. 163, Acts 42nd Legislature, 1931 (Bond and Warrant Law of 1931), Vernon's Ann. Civ. St., Art. 2368a, with reference to notice, competitive bids, and the right to referendum, until after June 1, 1934. Also at this point we think the reference in the ordinance to Article 1111 to 1114, inclusive, should be treated as surplusage as the authority for these bonds is found in the other statutes, if it exists at all. We also here call at-

tention to the fact that Article 1118a, supra, as amended by ch. 36, First Called Session 43rd Legislature, is not an exclusive statute but is cumulative of all other acts pertaining to the same or similar subjects. We quote from Section 7 of ch. 36, supra, as follows:

"* * *

"Provided, further, that nothing in this Act, however, shall repeal or affect any other legislation pertaining to the same or similar subjects, but shall be cumulative of all Acts granting the power to all cities and towns, including Home Rule cities, operating under Title 28 of the Revised Civil Statutes of 1925, and it is not intended to limit or impair any power given by and other of such Acts, nor shall any other Act be deemed to limit or impair the power of any city under this Act."

Again referring to the 1926 bonds it is shown that during said year relator issued and sold $1,500,000.00 worth of water works bonds. These bonds bear five per cent interest per annum. They mature as to principal $60,000.00 each year from 1927 to 1951, both inclusive. They were issued under and by virtue of the provisions of Article 1109a, Vernon's R. C. S. of Texas, 1925, as it then existed, and are secured by a deed of trust on the physical properties of the water system, and the rents and revenues thereof for the years they run. These bonds also can never be a claim against the tax funds of relator; but are secured alone by the physical properties and revenues above mentioned. We will go more into detail as to these bonds and the deed of trust securing the same later in this opinion. Since the issuance of the 1926 bonds relator has promptly paid each installment of principal and interest thereon when due. In this connection it is shown that there has already been paid $420,000.00 on the principal, and that there is now outstanding $1,080,000.00 thereof. All such principal and interest has been paid as it matured out of the net revenues of the water system.

During the time the 1926 bonds have been outstanding the revenues of the water system have been sufficient to pay all actual operating expenses of the system, the annual principal and interest on the 1926 bonds, and leave a so-called surplus each year ranging in amounts from $413,315.10 to $670,433.35. As we understand this record this surplus has gone into replacements, extensions and betterments for the water system, and has not been impounded. Only so much of the revenues as was necessary to pay accrued principal and interest on the 1926 bonds has been applied thereto or held therefor.

■ Relator sues the Attorney General to compel the approval of this bond record. It also sues the co-respondents, Rockwell et al. as the holders of some of the 1926 bonds. It sues them personally and as the representatives of a class, that is, as the representatives of all of the holders of the 1926 bonds. In this connection relator shows that the 1926 bonds are payable to bearer, and freely circulate in the open market, passing on mere delivery. It is. then shown that they are owned by numerous parties, and that relator has no knowledge or record as to who they are. Relator shows that it has made diligent inquiry to ascertain the names of the holders of said 1926 bonds, and has been unable to learn such names except those that are made parties hereto. Finally it is shown that the co-respondents own among them about $140,000.00 of the 1926 bonds. The co-respondents have answered herein to protect their own rights, and to protect the rights of all other 1926 bondholders. We think the facts justify their presence in both capacities, and that this suit can proceed to final judgment binding on all 1926 bondholders.

The Attorney General has filed answer, and says that he has refused to approve these bonds because he has grave doubt as to their validity on account of. the following law questions:

"1. That the proposed bonds constitute a debt of the City of Houston within the provisions of Sections 5 and 7 of Article XI of the Constitution, and that under the act or acts authorizing such bonds no provision has been or can be made for the levy of a tax to pay them, as is required by such sections of the constitution.

"2. That under the provisions of Article 1111, 1112, 1113 and 1114 of the Revised Civil Statutes, 1925, as amended by S. B. No. 334, Chapter 122 of 1933. (43rd Leg. Reg. Sess., p. 320), and other applicable statutes, the City has no power to borrow money payable solely out of income except as incidental to the making of a mortgage to secure such loan and that under Article 1112 it cannot make any such loan without an election except for the purposes named in such Article.

"3. That H. B. No. 212, passed at the first called session of the 43rd Legislature, and approved October 16, 1933 (43rd Leg., 1st C. S., p. 113), under which also authority is claimed for the issuance of such bonds, is a special or local law passed in violation of Section 56 of Article III of the Constitution.

"4. That said H. B. 212, involves a subject that was not presented to the Legislature by the Governor and was passed at such called session in violation of Section 40 of Article III of the Constitution.

"5.   That the City of Houston has outstanding $1,080,000.00 bonds, dated June 15, 1926, and maturing serially to and including the year 1951, which bonds were issued under Chapter 33 of the Laws of 1925 (Vernon's Annotated Revised Civil Statutes, 1925, Article 1109a) and that under Section 2 of such Act the city cannot pledge or use any part of the income of its existing waterworks system, or the system as proposed to be improved for the payment of the proposed bonds or of any new bonds until all of such outstanding bonds are finally paid.

"6.   That in so far as H. B. No. 212 permits the pledge or use of any part of the income of the water works system for the payment of new bonds in violation of Section 2 of Article 1109-a, as it existed at the time of the issuance of the outstanding bonds, it impairs the obligation of the contract rights of holders of such outstanding bonds and is unconstitutional.

"7.   That the proposed bonds are to be issued to a Federal agency and have not been authorized by an election as required by S. B. No. 70, approved November 1st, 1933, (43rd Leg. 1st C. S., p. 327), with respect to a city located in a county in which there has been damage to public and private property from a tropical hurricane during the year 1933.   That it is impossible in the nature of things for the Attorney General to satisfy himself, or to establish conclusively as a fact for the protection of such bonds, that no such damage has occurred in Harris County during the year 1933.

"8.   That the provisions of Chapter 163, Acts of the Regular Session of the 42nd Legislature as amended, including particularly Section 11 thereof, are applicable and the city has not complied with the requirements thereof in reference to giving notice."

Co-respondents have also answered, in their own behalf, and as representatives of their class, and in effect adopt the answer of the Attorney General.   Co-respondents also advance the following propositions:

"PROPOSITION NUMBER ONE.

"The holders of the City of Houston Five Per Cent Water Works Bonds issued June 15, 1926, have a first lien, with the exception of certain stipulated prior liens, on the entire water works system of the City of Houston, all additions, extensions and betterments thereof, and all rents and revenues derived therefrom.

"PROPOSITION NUMBER TWO.

"The holders of the City of Houston Five Per Cent Water Works Bonds issued June 15, 1926, have the right to require that any excess revenue derived from the water system or any

additions, extensions or betterments thereof, shall be impounded as additional security for said bonds or used to construct further additions, extensions or betterments of said system and shall not be used to pay any other debt, expense or obligation of the City of Houston."

Co-respondents also advance the following counter propositions:

"Where the City of Houston, as in the present case, has issued one Million Five Hundred Thousand Dollars ($1,500,-000) of bonds secured by a lien upon its water works system and the income and revenue derived therefrom under authority of Section 1109a of the Revised Statutes of 1925, and there is still outstanding as at present One Million Eighty Thousand Dollars ($1,080,000) of said bonds, the income and revenue from such system, together with the additions, extensions and betterments thereof, can only be used to pay proper operating expenses and maintenance and interest and sinking fund requirements under the bonds issued and for further additions, extensions or betterments of said system and no part thereof can be used to pay any other debt, expense or obligation of the City."

The 1926 bonds were issued under Article 1109a, Vernon's R. C. S. of Texas, 1925. We quote so much of that statute as is pertinent here:

"Art. 1109a. Cities may mortgage.—All cities having more than one hundred and sixty thousand (160,000) inhabitants shall have power to issue bonds or notes therefor, and to secure payment thereof, to mortgage and encumber any such water system, and the incomes thereof, and everything pertaining thereto.

"And to purchase or otherwise acquire additions to, or extensions or enlargements of any such water systems, or additional water powers, riparian rights, or repair of such systems, or either of them; all cities having more than one hundred and sixty thousand (160,000) inhabitants shall have power to issue bonds and notes therefor, and to secure payment thereof, to mortgage and encumber such additions, extensions, enlargements, additional water powers, riparian rights, the income therefrom, and everything pertaining thereto, either separately or with such systems, or either of them.

"And as additional security therefor, by the terms of such encumbrance, may grant to the purchaser, or purchaser under any sale or foreclosure thereunder, a franchise to operate the system and properties so purchased, for a term not over twenty

years after such purchase, subject to all laws regulating the same then in force.

"2. Whenever the income of any water system shall be encumbered under this Act, the expense of operating and maintenance, including all salaries, labor, materials, interest, repairs, and extensions, necessary to render efficient service, and every proper item of expense shall always be a first lien and charge against such income. The rates charged for services furnished by any of said systems shall be equal and uniform, and no free service shall be allowed except for city public schools, or buildings and institutions operated by such city, and there shall be charged and collected for such services a sufficient rate to pay for all operating, maintenance, depreciation, replacement, betterment, and interest charges, and for interest and sinking fund sufficient to pay any bond or notes issued to purchase, construct or improve any such systems or of any outstanding indebtedness against same. No part of the income of any such system shall ever be used to pay any other debt, expense or obligation of such city, until the indebtedness so secured shall have been finally paid.

"3. All cities acquiring a water system, or any addition, improvement or extension thereto, under this Act, may borrow money on the security of the plant, or addition or extension, so acquired, or owned, for the purpose of paying the purchase price and for the addition, improvement and extension thereof, and may issue bonds, notes or other obligations to evidence the moneys so borrowed, which bonds, notes or other obligations shall have the characteristics of negotiable instruments under the law merchant. Every contract, bond or note executed or issued under this Act shall contain this clause 'The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation.' No such obligation shall ever be a debt of such city, but solely a charge upon the properties so encumbered, and shall never be reckoned in determining the power of such city to issue bonds for any purpose authorized by law."

The ordinance authorizing the 1926 bonds expressly states, in effect, that the relator, in issuing them, was acting under and by virtue of the terms of the above statute.

Section 3 of such ordinance provides:

"Section 3. Said bonds, together with the interest thereon shall be payable only out of the 'Water Works Bonds and Interest Redemption Account' hereby established and shall be a valid claim of the holder against said fund and the income and revenue of said plant pledged to said fund and the holder or holders

thereof shall never have the right to demand payment of said bonds or the interest thereon out of said funds to be raised by taxation."

The 1926 bonds contain, among other provisions, the following:

"This bond is secured by mortgage deed of trust bearing even date herewith made by the City of Houston, Texas, to the Chase National Bank, a corporation of the City of New York, State of New York, as Trustee and said lien securing this and said other bonds is a lien upon such water plant and system and such betterments, additions, improvements and extensions thereto and the income and revenues thereof as mentioned in the deed of trust until the payment in full of this and said other bonds and the interest thereon."

The habendum clause of the deed of trust securing the 1926 bonds reads as follows:

"(9) To HAVE AND TO HOLD, the above mentioned property, premises, rights, franchises, easements, privileges, immunities, appurtenances, business and good will hereby conveyed, assigned or intended to be conveyed or assigned, and the tolls, incomes, revenues, rents, issues and profits thereof to the use of the said Party of the Second Part, Trustee, and to its successors in Trust according to the nature, tenor and quality thereof respectively and for the trust and purpose hereinafter expressed and of and concerning the same for the equal pro rata benefit and security of the owners of any of the bonds that may be issued hereunder and whatever date the same may be so issued without any privilege, priority or distinction of one bond over another.

"The lien of this deed of trust shall extent not only to the water works plant and system herein described, but to all the additions and extensions hereafter made and the equipment hereafter acquired out of the One Million Five Hundred Thousand ($1,500,000.00) Dollars mentioned herein and said lien shall also extend to the income of the entire water works system of the City of Houston described herein and which may be acquired hereafter to the full extent of the necessary amount to provide for the payment of the interest on all bonds issued hereunder, when and as same become due and to provide the necessary and requisite sinking fund for the redemption of said bonds as same become due and payable as provided under the constitution and laws of the State of Texas."

Article 22 of the 1926 deed of trust also contains the following provision:

"ARTICLE TWENTY-TWO

"It is hereby covenanted and agreed by the City of Houston, with the Trustee, herein and the holders of the bonds herein issued and to be issued or any of them, that it will faithfully and punctually perform all duties with reference to said water works plant required by the Constitution and Statutes of the State of Texas, and the Charter of the City of Houston, including the making and collecting of reasonable and sufficient rates lawfully established for services rendered by said water works plant, segregating the income and revenue of said plant and the application of the respective funds hereinabove created, and the said City, hereby irrevocably covenants, binds and obligates itself not to sell or in any manner dispose of said water works plant including any additions, extensions and improvements that may be made thereto until the indebtedness secured hereby shall have been fully paid and satisfied, both as to principal and interest, except as provided herein and said City further covenants and agrees to the Trustee herein and the owners of said bonds to maintain in good condition and to operate said water works plant and charge and collect such rates and charges for the services rendered by said plant within the limitations provided by law, so that the net revenue and income of said water works plant will be sufficient to provide for the payment of the bonds herein authorized to be issued and the interest thereon as same become due and payable."

■ At this point we pause to say that in our opinion the holders of the 1926 bonds are secured in their payment by the deed of trust on all of the present physical properties of this system, together with the net revenues thereof, to the full extent provided by Article 1109a above mentioned. We do not understand that relator questions this conclusion.

We shall now proceed to decide the law questions raised by the answers of the respondent and co-rospondents.

■ By his first objection the Attorney General contends that these bonds constitute a debt against the City and are therefore attempted to be issued in violation of Sections 5 and 7, of Article XI of our State Constitution. These bonds are proposed to be issued under and by virtue of the statutes above mentioned. The ordinance authorizing these bonds, the bonds, and the deed of trust securing them expressly provide that they are secured only by net revenues of the water system, and that they shall never become a claim against the tax funds of the city. The pertinent statutes authorizing such bonds make the same provision. In other words, the holders of these bonds

will merely have a claim on the net revenues of the water system to secure their payment. It is settled that such an obligation does not violate either of the above mentioned constitutional provisions. City of Dayton v. Allred (Com. App. opinion adopted) ante, p. 60, 68 S. W. (2d) 172, and authorities there cited.

■ By his second objection the Attorney General contends that these bonds are illegal because the election called for in Article 1112, R. C. S., 1925, has not been had. It will be noted that the bonds here involved are authorized, if at all, under Article 1109a supra, as amended by the Acts First Called Session 43rd Legislature, ch. 36, 1933, supra. The amended Act provides in Section 6 thereof for an election for bond issues of this kind as a general rule, but as already shown relator has more than 290,000 inhabitants according to the last preceding Federal Census. By the express provisions of Section 7 of Article 1109a, as amended, relator as a city of more than 290,000 inhabitants, is exempted from the provisions of Section 6, supra.

■ By his third objection the Attorney General contends that Article 1109a, as amended by H. B. 212, ch. 36, p. 113, Acts First Called Session 43rd Legislature, is unconstitutional and void because in violation of Section 56 of Article 3 of our State Constitution. That constitutional provision so far as applicable here reads as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: * * *

" 'Regulating the affairs of counties, cities, towns, wards or school districts. * * *

" 'Incorporating cities, towns or villages, or changing their charters.' "

We interpret this objection to refer to the fact that the Act, by certain of its provisions, embraces only cities having more than 160,000 inhabitants, and by other provisions embraces only cities having more than 290,000 inhabitants, according to the last preceding Federal Census. We think the objection should be overruled. The Act is general in its application, and applies to all cities that come under its classifications. The Act does not confine itself alone to cities that had the designated population at the time it became effective, or was enacted; neither does it tie itself to any particular census. On the other hand, any city in the State that now has, or hereafter attains the designated populations will come under its provisions. Also the classifications as to populations are reasonable, and ger-

mane to the subject matter of the legislation. Such a law does not violate the above constitutional provision. City of Fort Worth v. Bobbitt, 36 S. W. (2d), 471; Id., 122 Texas, 14, 41 S. W. (2d), 228 (Com. App. opinion adopted). In this connection we quote the following from the opinion in 36 S. W. (2d),471, spura.

"To state our views in another form, we hold that a law that has uniform application throughout the state to cities of a certain class, as to population, or other legitimate classification, is not repugnant to the constitutional provisions under discussion, even though there is only one city in the state of that class, but when the law is so drawn that it applies only to one city, and can never apply to any but this one city in any possible event, the law is unsonstitutional and void, because such a law is not based on classification but on isolation. Cooley's Constitutional Limitations (8th Ed.) Notes, Vol. 1, page 262, 263."

In the first Bobbitt opinion, supra, the law there involved was so drawn that it only applied to cities of a certain population according to the Federal Census of 1920. This law was adjudged in violation of Section 56, of Article 3, supra, of our Constitution. In the second Bobbitt opinion the law was amended so as to apply to all cities having a population of more than 100,000 inhabitants as shown by the last preceding Federal Census. The amended law was held not in violation of such constitutional provisions.

By his fourth objection the Attorney General says that H. B. 212, ch. 36, p. 113, supra, is in contravention of Section 40 of Article 3 or our State Constitution. This constitutional provision reads as follows:

"Sec. 40. When the Legislature shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session, or presented to them by the Governor; and no such session shall be of longer duration than thirty days."

The above Act is regular upon its face. It was properly signed by the President of the Senate and Speaker of the House, and was duly authenticated by the proper officers of both houses. Also it was duly received and approved by the Governor, and filed in the office of the Secretary of State. It is now the settled law of this State that the courts will not go behind such a record to ascertain if the subject matter of legislation enacted by a special session of the Legislature, was in response to a subject designated by the Governor's proclama-

tion calling the special session, or otherwise presented by him. Jackson v. Walker, 121 Texas, 303, 49 S. W. (2d), 693, and authorities there cited. We overrule the fourth objection.

■ By his seventh objection the Attorney General contends that since these bonds are to be sold to a Federal agency, they are illegal because the provisions of S. B. 70, ch. 118, p. 327, Acts First Called Session 43rd Legislature, were not complied with. It is admitted that neither the city, nor Harris County, in which it is located, had a tropical hurricane during the year 1933. The City contends that for that reason the Act under discussion has no application to it. The City further contends that this Court will take judicial knowledge of the fact that Harris County was not damaged by a tropical hurricane during 1933. We do not find it necessary to decide whether Harris County, or the cities therein located, come under the provisions of ch. 118, supra. It is sufficient to say that these bonds are not attempted to be issued under such Act, and it has no application to them. In any event such Act was not intended to amend or repeal the various other laws mentioned above.

■ By his eighth objection the Attorney General contends that these bonds are illegal because the notice provided for in ch. 163, Acts Regular Session 42nd Legislature, p. 269, was not complied with. This objection is overruled. It is especially provided by Section 2a of Article 1118a, as amended by H. B. 810, ch. 53, p. 106, Acts Regular Session 43rd Legislature, 1933, that:

"Section 2a. That notwithstanding any of the provisions of House Bill No. 312, Chapter 163, Acts of the 42nd Legislature, 1931, the requirements of said House Bill No. 312, Acts 42nd Legislature, 1931, Chapter 163, with reference to notice, competitive bids, and the right to referendum, shall not apply to cities and towns acting under the authority conferred in this Act, until after June 1, 1934, instead of until after June 1, 1932, as provided in House Bill No. 312, Chapter 163, Acts 42nd Legislature, 1931."

It is admitted that relator owns its own water system and gas system. By the express provisions of the statute above quoted it is exempted from the provisions of ch. 163, supra, with reference to notice, etc., until after June 1, 1934.

■ This brings us to a consideration of the most difficult law questions involved in this litigation. These questions are raised by the Attorney General's fifth and sixth objections, supra, and by co-respondent's first and second propositions,

and counter proposition, supra. In this connection we deem it but fair to the Attorney General to say that the other objections raised by him were so raised only because they were raised by the Federal agency to whom relator proposes to sell these bonds.

By their two propositions and counter propositions, supra, the co-respondents, Rockwell et al, who hold the 1926 bonds, contend that they are vested with a blanket deed of trust on all of the net revenues of this water system for all of the years their bonds run to secure their payment, principal and interest. In this regard they advance the proposition and argument that under the provisions of Article 1109a, supra, as it existed when their bonds were issued and sold, and under their contract made thereunder, so long as any of their bonds are outstanding, the revenues of this water system, can be used only for the purposes allowed by the statute, to-wit: operating expenses, maintenance, depreciation, replacements, betterments and interest and sinking fund requirements for their bonds. Co-respondents say further that they have the right to have any surplus for any given year, remaining after the payment of the above items, held, only to be expended for the purposes allowed by the statute under which their bonds were issued.

The Attorney General by his fifth and sixth objections makes substantially the same contentions as the co-respondents.

Relator seems to contend that after it has paid the accrued principal and interest up to and including a given year, it can use any net surplus remaining to pay this, a second issue of bonds. Of course such contention amounts to the proposition that the holders of the 1926 bonds, do not hold a blanket lien on the net revenues for this system, for all of the years their bonds run to secure their payment, but, only a lien on the net revenues of each year to secure the bonds and interest then maturing.

A reading of the 1926 bond ordinance, and the bonds and deed of trust issued thereunder, clearly demonstrates that the city was acting under and by virtue of the provisions of Article 1109a, as it then existed, in the issuance of the 1926 bonds. It is also clearly evident that the ordinance, and contract thereby authorized, vested, and was intended to vest, the holders of such bonds with all the rights and security provided by such statute. Also it goes without saying that such rights as were vested under the contract cannot be impaired by any subsequent act or contract of the city to which the 1926 bondholders are not parties. It therefore becomes evident that it is necessary for us to examine and interpret the statute in order to

determine the rights of the 1926 bondholders, and the authority of the city to base a subsequent bond issue on the net earnings of its water system.

The first section of Article 1109a as it existed when the 1926 bonds were issued expressly authorized cities of more than 160,000 inhabitants to mortgage and encumber their water systems and the income thereof. It also authorized such cities to mortgage and encumber the additions, extensions, enlargements, additional water powers and riparian rights of such systems, and the income therefrom, either separately or with such systems. After making provision for the encumbrances above mentioned, Article 1109a, in Section 2 thereof, expressly provided that when the income of the water system was encumbered the expense of operation and maintenance, should be a first lien and charge against such income. This section then made provision for charging rates sufficient to pay operating expenses, and the interest and principal of the obligation secured by the plant income. The statute carefully defines what was meant by operating expenses and maintenance, including therein, "all salaries, labor, materials, interest, repairs, and extensions necessary to render efficient service," etc. The statute then carefully required that the city shall charge and collect "a sufficient rate to pay all operating, maintenance, depreciation, replacement, betterment, and interest charges, and for interest and sinking funds," etc. It is then finally provided by this section:

"2. * * * No part of the income of any such system shall ever be used to pay any other debt, expense or obligation of such city, until the indebtedness so secured shall have been finally paid." (Italics ours.)

The above quoted language is so explicit that it will admit of no construction. When it is considered in the light of the balance of the section its meaning is not changed or rendered obscure. The use of the words "ever" and "finally" show that the statute means that so long as any of the indebtedness secured by the water system's net income is outstanding the revenues thereof must not be used to pay any other debt, expense or obligation.

Relator takes the position that after operating expenses and maintenance, and the current interest and sinking fund requirements for the 1926 bonds have been met, it can use the excess, if any, for any purpose it sees fit. Relator supports this proposition by numerous authorities to the effect that a statute should not be given an absurd construction, but should be so construed so as to produce a reasonable result in prac-

tical application. We are aware that the rule is that a statute should be construed so as to give effect to the intention of the Legislature; for the intention of the Legislature in enacting the law is the law itself. Courts will not follow the letter of a statute when it leads away from the true intention of the Legislature, and to conclusions inconsistent with the general purposes of the Act. Edwards v. Morton, 92 Texas, 152. On the other hand it is equally the rule that a statute should not be given a construction that renders it meaningless, if it is reasonably possible to construe it otherwise. To say that the quoted portion of this statute should be construed as contended for by relator would render it utterly meaningless, and so much blank paper.

It is earnestly argued by counsel for relator that it is absurd and unreasonable to say that the Legislature intended to impound this fund in idleness for the life of bonds running many years. We think no absurd or unreasonable requirement is indicated by the statute. The very act itself provides that the city may expend the income from the system "for the expense of operating and maintenance, including all salaries, labor, materials, interest, repairs, and extensions necessary to render efficient service," etc. Further portions of the statute show that included in these items are depreciation, replacements and betterments. On the other hand the city cannot create any other debt against such income until the indebtedness secured by the 1926 bonds is *"finally paid."* The intent of the Legislature as expressed by the letter of the statute is plain. To give it effect does not lead away from the true intention of the Legislature, or to conclusions inconsistent with the general purposes of the Act. Finally to give effect to the letter of the statute will not result in any unreasonable hardship to the city, or to any absurdity. The statute was evidently intended to prohibit the pyramiding of indebtednesses secured by the income from water systems.

The mandamus here prayed for is refused.

Adopted by the Supreme Court, May 2, 1934.