Houston & Texas Central Railroad Company v.
Henry A. Stewart.

No. 764.    Decided March 27, 1899.

1. Railway—Negligence—Furnishing Information as to Trains.

The law imposes on railway companies the duty to adopt such measures as are reasonably safe to inform its employes of the whereabouts of other trains upon the track upon which they are operating one, so as to enable them to guard against collisions; but does not undertake to designate the particular means—as by messages from a train dispatcher—by which this duty shall be discharged. (P. 545.)

2. Same—Charge of Court.

Where the evidence was conflicting as to the usual course of acquiring information of the whereabouts of preceding trains going in the same direction,—whether by messages from dispatchers or by inquiry at stations,—a charge making it the duty of the company to give such information through its dispatchers was erroneous. (Pp. 542-546.)

**3.  Constitutional Law—Deposition of Party.**

Article 2293a, Revised Statutes, denying to either party, in suits where a corporation is a party, the right to take the depositions of the adversary without notice, is not opposed to the fourteenth amendment to the Constitution of the United States; to so hold would be to give the corporation, not equality of right, but advantage.  (P. 546.)

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

Stewart sued the railway company and recovered judgment on account of personal injuries.  The company appealed and, on affirmance, obtained writ of error.

*Frank Andrews,* for appellant.—The charge is upon the weight of evidence, and assumes, regardless of the proof, that it was negligence on the part of the defendant's dispatchers to fail to keep the train crew advised of the whereabouts of other trains on the defendant's road. Rev. Stats., art. 1317; Gay v. McGuffin, 9 Texas, 501; Golden v. Patterson, 56 Texas, 628; Insurance Co. v. Brown, 82 Texas, 634; Willis v. Hudson, 72 Texas, 608; Railway v. Christman, 65 Texas, 374; Johnson v. Railway, 2 Texas Civ. App., 141; Railway v. Pennell, 2 Texas Civ. App., 128; Railway v. Brentford, 79 Texas, 625; Railway v. Kutac, 76 Texas, 478; Railway v. Nixon, 52 Texas, 26; Tel. Co. v. Edsall, 63 Texas, 675; Allen v. Pierson, 60 Texas, 606; McAninch v. Freeman, 69 Texas, 448; Kerlicks v. Meyer, 84 Texas, 158; Railway v. Eckols, 7 Texas Civ. App., 433; Railway v. Rogers, 40 S. W. Rep., 957.

Said law (article 2293a, Revised Statutes) is a violation of section 1 of the fourteenth amendment of the Constitution of the United States, which provides, in effect, that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, because said act is an attempt to abridge the privileges and immunities of citizens of the United States, and to deprive them of property without due process of law, and to deny to citizens within the jurisdiction of the State of Texas the equal protection of the laws.  Santa Clara County v. Railway, 118 U. S., 394; Mining Co. v. Pennsylvania, 125 U. S., 189; Railway v. Mackey, 127 U. S., 205; Railway v. Herrick, 127 U. S., 210; Railway v. Beckwith, 129 U. S., 26; Railway v. Gibbes, 142 U. S., 386; Turnpike Co. v. Sandford, 164 U. S., 578; Railway v. Ellis, 165 U S., 154; Vanzant v. Waddel, 2 Yerg., 260; Yick Wo v. Hopkins, 118 U. S., 356; Cool. Const. Lim., 484; Lin Sing v. Washburn, 20 Cal., 534; Railway v. Moss, 60 Miss., 641; Wilder v. Railway, 70 Mich., 382; Lafferty v. Railway, 71 Mich., 35; Railway v. Wilson, 19 S. W. Rep., 910.

*Ewing & Ring*, for appellee.—The charge indulged no unwarranted assumption, and was not upon the weight of the evidence, (1) because the duty of care declared and submitted was precisely that which the law imposes; (2) because, if aliter, the duty was an admitted one upon the uncontroverted evidence; and (3) because, upon the facts submitted by the charge and necessarily found by the jury, actionable negligence was a conclusion of law.

That the law imposes the duty declared by the charge, see Railway v. Smith, 76 Texas, 612, a case directly in point. That an admitted duty upon uncontroverted evidence is a proper assumption, and not on the weight of evidence, see Railway v. Mallon, 65 Texas, 115; Railway v. Lehmberg, 75 Texas, 62, 66; McFaddin v. Schill, 84 Texas, 77. That, as the facts found by the jury (in connection with the undisputed facts) necessarily imported negligence, no technical error in the charge could avail for reversal, see Railway v. Lankford, 88 Texas, 499; same case, 9 Texas Civ. App., 593; Railway v. Cornelius, 10 Texas Civ. App., 125.

The claim that the statute is vicious as invidious special or class legislation, under either the State or Federal Constitutions, appears to be frivolous, since, so far from resting upon arbitrary discrimination without basis of reason for the classification, its very object was, and its effect is, to remedy a glaring and unjust inequality in a rule of procedure theretofore so framed as to be incapable of mutuality of operation in the class of cases covered by the corrective statute. Insurance Co. v. Chowning, 86 Texas, 654; Railway v. Mackey, 127 U. S., 209; Railway v. Ellis, 165 U. S., 150; Magoun v. Bank, 170 U. S., 283, reviewing previous cases on the subject of equal protection of the laws; Suth. Stat. Const., sec. 122.

BROWN, Associate Justice.—Stewart sued the railroad company in the District Court of Harris County to recover damages for injuries received by him while in its employ and through its negligence. The railroad company pleaded a general denial, that the plaintiff was injured through its own negligence, and that the injuries received by plaintiff were caused by the negligence of his fellow servant. The trial was had before a jury, and verdict and judgment rendered in favor of Stewart against the railroad company, which was affirmed by the Court of Civil Appeals.

The facts necessary to an understanding of the questions presented by this writ of error are in substance that on January 22, 1897, regular freight train No. 7 on the road of the plaintiff in error was on its regular run from Houston to Hearne. Its regular time was shown on the schedule or time card, and its speed was limited from twelve to sixteen miles per hour, which was known to the engineer on train No. 103.

After regular train No. 7 had departed from Houston, extra freight train No. 103 left the city of Houston at 5:20 a. m. of the same day for Hearne, running under the following orders, which were delivered to the engineer and conductor: "(1). No. 4, engine 141, will wait at

Thompson until 6:05 a. m. for extra 103, north." (Signed) "J. M. L."
Below it were written the words, "Make twenty-five miles per hour."
"(2). No. 6, January 22, 1897, engine 103, will run extra from Houston
to Hearne and has right of track against No. 8, engine 127, and No. 12,
engine 129, Houston to Hempstead." (Signed) "J. M. L." The initials
were those of the superintendent of the railroad company, but the orders
were delivered from the train dispatcher. The witnesses differed as to
the meaning of the words, "Make twenty-five miles per hour." The
train dispatcher testified that it applied as far as Thompson only, while
the engineer and conductor on 103 understood it to apply to the whole
way to Hearne and acted upon that interpretation, and the Court of
Civil Appeals concluded it was a reasonable construction of the language.

Henry A. Stewart was fireman on 103 and Higgins was engineer in
charge of that engine. There is a conflict in the evidence as to what
control or supervision the engineer had over the fireman, but the evi-
dence is sufficient to justify the conclusion of the Court of Civil Appeals
that it was of such a character as to make him a vice-principal of the
company as to Stewart and not a fellow servant.

On the trip from Houston, extra No. 103, under telegraphic orders
sent from the office of the train dispatcher, met and passed a number of
trains going in the opposite direction, viz., from Hearne to Houston.

Regular train No. 7 was about three hours behind its regular time,
of which fact neither the conductor nor the engineer on 103 were no-
tified by the train dispatcher nor by any station agent. If No. 7 had
been on time it would have reached Hearne before the arrival of 103.
The evidence was sharply conflicting as to whether it was the duty of the
train dispatcher to furnish notice to the conductor and engineer of 103
of the whereabouts of No. 7, or that the engineer on 103 should inform
himself of such fact by inquiry at the different stations. Two train dis-
patchers testified that, concerning trains going in the opposite direction,
it was the duty of the train dispatcher to give orders and directions to
103 as to the whereabouts and the place of meeting of such opposing
trains, but that it was the duty of the engineer upon the extra train to
inquire at the different stations if he needed information of the where-
abouts of regular train No. 7, running in the same direction. Stewart
and the engineer on the train, Higgins, both testified that it was the
duty of the train dispatcher to furnish information with regard to No.
7 and that the extra train would only stop at a station if a red board or
light, which is a signal for orders, was put up, and would indicate that
the station agent had orders for that train.

When 103 reached a station known as Benchley, it was running at a
speed of twenty-five or thirty miles per hour. It was foggy and very
difficult to see an object at a considerable distance ahead. There was
no signal out for orders at Benchley and the engineer did not bring his
train to a halt at that station, but passed by, and just as he was going
out of the switches at the north end, he discovered the rear of train No.
7 but a short distance ahead of him. The engineer at once put on the

air to its fullest capacity to stop the train, and he and the fireman leaped from the cab of the engine. The collision occurred and the fireman received serious injuries.

The judge of the trial court gave to the jury the following charge: "The train dispatcher of a railroad company owes to those operating its trains the duty to use ordinary care to give to the employes operating its trains such information as is necessary to the operation of its trains in a reasonably safe manner." "If you believe from the evidence that the train collided with by the engine on which the plaintiff was fireman was two hours or so behind time, as alleged in plaintiff's petition, and that those operating the train on which plaintiff was fireman had not been notified thereof, and if you find such failure, if any, to give such notice caused injury to the plaintiff, and if you further find that such failure, if any, to give such notice was, under all the circumstances, a failure on the part of the railway company to use ordinary care to give the employes operating the train on which the plaintiff was fireman such information as was necessary to the operation of said train in a reasonably safe manner, then, if you so find, you will find for the plaintiff, and against the defendant, such an amount as from the evidence you believe will compensate the plaintiff in money for his diminished ability, if any, to labor and earn a living; for his lost time, if any; for his medical expenses, if any; and for his physical and mental pain and suffering, if any, caused by such accident (if you find any such were so caused), unless, under the charges hereafter given, you should find the plaintiff is chargeable with contributory negligence debarring recovery, in which event, if you so find, you will find for the defendant."

In support of the charge, the learned judge who wrote the opinion of the Court of Civil Appeals said: "The contention is that the charge imposes a duty not imposed by law, and invades the province of the jury by assuming as a fact that about which there was a conflict of evidence. If the duty expressed by the charge is one which the law imposes, the opinions of witnesses that it did not exist can not affect it; and, on the other hand, if the law does not impose the duty as it is defined, the charge is necessarily erroneous. * * * The court can not ordinarily instruct that a particular act done or omitted constitutes negligence unless the act done had been prohibited or that omitted has been enjoined by statute. But where the law, whether written or unwritten, has imposed a duty, the court may define such duty and instruct that a failure to perform it is negligence."

The fault of the charge under review is not in the fact that it defines what is the duty of the railroad company towards its employes under circumstances such as are shown by the evidence in this case, because we believe that there can be little controversy over the proposition of the Court of Civil Appeals that a court may and should instruct the jury as to what is the duty of the master to the servant under such conditions, defining that duty and informing the jury that a failure to perform it constitutes negligence; however, in this case the court did not

inform the jury of the duty of the master, but stated that the duty which by law rested upon the master was an obligation to be performed by a particular employe, the train dispatcher, when there is no law, either statutory or otherwise, which requires that a train dispatcher be intrusted by every railroad company with the performance of that particular duty. The rule announced would take from the railroad company the power to provide other methods by which to give notice to its employes under like circumstances and the right to commit the performance of such duties to such of its employes or officers as it may see fit. The charge was wholly unwarranted by the law, and had the effect, considering the state of the evidence, to instruct the jury to return a verdict for the plaintiff unless they should find that he was debarred of recovery by contributory negligence. The evidence was undisputed that the train dspatcher did not, directly or indirectly, impart to the engineer or conductor on extra train 103 any information of the whereabouts of regular train No. 7. Consequently, as we said before, the effect of the charge was to direct a verdict in the case, and we doubt not that the jury must have stopped at this point in their inquiry when they decided that the plaintiff was not guilty of contributory negligence.

It is the duty by law of a railroad company to adopt such measures as are reasonably safe to inform its employes of the whereabouts of trains upon the track on which they are operating another train so as to enable them to guard against collisions and to protect themselves from injury. Railway v. Smith, 76 Texas, 611. But the law has not undertaken to designate the particular means by which this duty shall be discharged, nor to indicate any particular officer or employe upon whom it shall be devolved. The evidence in the case would have justified a finding that, under the rules of the company, it was the duty of the engineer upon extra 103 to take notice of the whereabouts of regular train No. 7, which was going in the same direction, and for the purposes of self-protection, to inquire at the different stations along the road concerning train No. 7. This does not seem to be palpably unreasonable or unsafe. If, for instance, the train dispatcher had directed the station agent at Bryan to inform the engineer of 103 that No. 7 had just passed Bryan, it would have been a direction to the agent at that place to give to those in control of 103 information which the train dispatcher must have received from the station agent himself before he could have given the instruction, and if when 103 stopped at Bryan, Higgins, the engineer, or the conductor had inquired of the agent at that place for regular train No. 7, he or they would have received the same information as if it had been retransmitted to the agent by the train dispatcher himself, and would have been just as effective in giving protection to those operating the following train. Likewise, if the engineer had halted his train at Benchley and had inquired for No. 7, he would have received the same information as if the station agent at Benchley had put up the signboard calling for him to stop for orders and had then delivered to him di-

rections from the train dispatcher on the subject. It might have caused some delay in the movements of 103, but that was a matter to be considered by the master and did not concern the servant. It would not have been less secure to the crew of the following train. A court can not say as a matter of law that a railroad company must perform its duty to its employes and give to them information in a given manner or through a certain person, nor in such way as would be most convenient to the employes, nor even in such manner as to be most secure, but the company must employ means reasonably safe to its employes engaged in the business.

It is not necessary for this court to add to the opinion of the Court of Civil Appeals upon the validity of article 2293a, Revised Statutes, except to say that the contention of plaintiff in error that the Constitution of the United States secures to corporations all rights conferred upon citizens as between themselves, although the same right is not given to the citizen against the corporation, is not sound. The railroad company does not seek equality before the law, but an advantage of the adversary party. The law is valid.

For error in the charge of the court before indicated, the judgments of the District Court and Court of Civil Appeals are reversed and the cause is remanded. It is ordered that the appellee pay all costs of this court and the Court of Civil Appeals.

*Reversed and remanded.*