**JAMES, State Treasurer, et al. v. GULF INS. CO. et al.**

No. 9430.

Court of Civil Appeals of Texas. Austin.

March 1, 1944.

Rehearing Denied March 22, 1944.

Gerald C. Mann, Atty. Gen., and R. W. Fairchild and Gaynor Kendall, Asst. Attys. Gen., for appellants.

Wood & Wood, of Austin, and Thompson, Knight, Harris, Wright, & Weisberg, of Dallas, for appellees Aetna Ins. Co. and Hartford Accident & Indemnity Co.

Shook & Shook, of Dallas, for appellee Republic Ins. Co.

Coleman Gay, of Austin, amicus curiae.

BLAIR, Justice.

This is an appeal from a judgment declaring Senate Bill 144, c. 313, Acts 1943, Vernon's Ann.Civ.St. arts. 6687b, § 15, 4385a, to be unconstitutional and restraining its enforcement. The material portions of the Act read, as follows:

"An Act providing for placing portions of certain special funds in the General Revenue Fund of the State of Texas and especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund of the State of Texas, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. Section 15 of Article 3 of House Bill No. 20, Acts of the Regular Session of the 47th Legislature, is amended hereby so as to read hereafter as follows:

" 'Section 15. Disposition of Fees

" 'All fees and charges required by this Act and collected by any officer or agent of the Department shall be remitted without deduction on Monday of each week to the Department at Austin, Texas, and all such fees so collected shall be deposited in the State Treasury in a fund to be known as the "Operator's and Chauffeur's License Fund".

" 'On September 1, 1943, and on September 1st of each and every year thereafter, all over Seventy-five Thousand ($75,000.00) Dollars of the remaining bal-

ance in such Operator's and Chauffeur's License Fund shall be transferred to and become a part of the General Revenue Fund of the State of Texas.'

"Sec. 2. On September 1st of each year, there shall be transferred from each of the following special funds into the General Revenue Fund that portion of the unexpended balance in each such fund which exceeds an amount equivalent to the receipts deposited to the credit of such special fund during the preceding fiscal year:

"Gas Utilities Fund

"Securities Act Fund

"Liquefied Petroleum Gas Fund

"Real Estate License Fund

"Recording Agents Fund

"Vending Machine Tax Enforcement Fund

"Vital Statistics Fund

"Special Game Fund

"Sand, Shell and Gravel Fund

"Fish Propagation and Protection Fund

"Board of Cosmetology Fund

"Motor Vehicle Insurance Fund

"Fire Insurance Division Fund

"Insurance Examination Fund

"Insurance Agents' License Fund

"Mutual Assessment Insurance Fund

"Insurance Fees Fund

"Such funds, when transferred, shall become and be a part of the General Revenue Fund for all purposes.

"Sec. 3. If the foregoing provisions shall be invalid as they may apply to any special fund, the Legislature hereby declares that it would nevertheless have provided for the transfers from the other special funds named herein.

"Sec. 4. The fact that it is an unsound practice to leave huge surpluses in Special Funds while the General Revenue Fund of the State of Texas shows a deficit, creates an emergency * * * and this Act shall take effect and be in force on September 1, 1943, and it is so enacted."

The act was passed by each branch of the Legislature on the last day of the 1943 Session of the 48th Legislature by adopting the report of a Conference Committee, with an emergency clause, and to become effective on September 1, 1943.

From the contentions made in the briefs, it seems the trial court held that Senate Bill 144 was enacted in violation of Secs. 30, 33, 35, 36 and 38 of Article 3, and Secs. 1, 2, 3 and 7 of Article 8 of the Texas Constitution, Vernon's Ann.St., and in violation of Sec. 1 of the 14th Amendment of the Federal Constitution. It is our view that the Act does not violate either of these constitutional provisions or requirements.

■ The Act does not violate Sec. 30 of Article 3, providing that "no law shall be passed, except by bill, and no bill shall be so amended in its passage through either House, so as to change its original purpose."

The photostatic copy of the original Act filed with the Secretary of State shows that it bears the signature of John Lee Smith, President of the Senate, and the signature of Price Daniel, Speaker of the House, certificates of passage of the Act over the respective signatures of Bob Barker, Secretary of the Senate, and Clarence Jones, Chief Clerk of the House, the approval of Coke Stevenson, the Governor of Texas, and the certificate of Sidney Latham, Secretary of State, showing that the Act was filed in his office on May 17, 1943. The title states the legislative purpose to transfer "portions of certain special funds . * * * and especially * * * a portion of the * * * Operator's and Chauffeur's License Fund to the General Revenue Fund." The body of the Act names or lists eighteen special funds of which a portion was to be so transferred. The emergency clause recites "that it is an unsound practice to leave huge surpluses in special funds while the General Revenue Fund * * * shows a deficit." There is nothing in the enrolled bill filed with the Secretary of State to indicate that it had undergone any change or amendment in its passage through the Legislature. Over objection it was shown that as originally passed by the Senate only the Operator's and Chauffeur's License Fund was named in the body of the bill, and from which all except $75,000 was to be transferred to the General Revenue Fund on each September 1st. The House amended the bill by adding a section transferring any balance in the "Senate Centennial Fund." The Senate refused to concur in this amendment. The Conference Committee struck out the transfer of the Senate Centennial Fund and added Sec. 2 transferring portions of the seventeen special funds named, and inserting in the first line of the title, between the words "placing" and "certain," the words "portions of."

If the enrolled bill filed with the Secretary of State may be impeached by evidence aliunde the bill, the foregoing evidence was not sufficient to show any change

of purpose in the passage through the Legislature. The sole purpose of the Act as expressed in its title was to transfer "certain" or "portions of certain special funds * * * and especially * * * a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund." The fact that particular special funds were added or taken from the list of funds did not change the purpose of the legislation, but it remained the same throughout the passage of the Act.

■ If a change in the original purpose of the legislation were made to appear, it was shown only by evidence aliunde the enrolled bill filed with the Secretary of State, and the rule is settled in this State that its validity cannot be so impeached. Williams v. Taylor, 83 Tex. 667, 19 S.W. 156; Blessing v. City of Galveston, 42 Tex. 641; Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865; Ellison v. Texas Liquor Control Board, Tex.Civ.App., 154 S.W.2d 322, error refused; Houston & T. C. Ry. Co. v. Stuart, Tex.Civ.App., 48 S. W. 799, reversed on other points 92 Tex. 540, 50 S.W. 333; Harris County v. Hammond, Tex.Civ.App., 203 S.W. 445, error refused; Parshall v. State, 62 Tex.Cr.R. 177, 138 S.W. 759.

In the Williams-Taylor case the court held [83 Tex. 667, 19 S.W. 157]:

"Our constitution provides that after the passage of a bill it shall be signed by the presiding officer of each house, in the presence of the house; and we are of opinion that when a bill has been so signed, and has been submitted to and approved by the governor, it was intended that it should afford conclusive evidence that the act had been passed in the manner required by the constitution."

In the Houston & T. C. Ry. Co. v. Stuart case [48 S.W. 804] the court held:

"It is contended that the act is void because adopted in violation of section 30, art. 3, of the state constitution, in that the original bill was so amended in its passage as to change its original purpose * * * (1) We cannot go behind the bill, signed, enrolled, and approved by the governor, to inquire into the changes which it underwent while passing the legislature. Williams v. Taylor, 83 Tex. 667, 19 S.W. 156; Field v. Clark, 143 U.S. 549, 12 S.Ct. 495 [36 L.Ed. 294]."

■ The Act does not violate the requirement of Sec. 33 of Art. 3, providing that "all bills for raising revenue shall originate in the House of Representatives."

The two special funds listed in Sec. 2 of the Act and directly involved in the instant case are the "Motor Vehicle Insurance Division Fund" and the "Fire Insurance Division Fund." The first fund arises under Sec. 11-a of Art. 4682b, Vernon's Ann.Civ.St. and the latter arises under Art. 4902, Vernon's Ann.Civ.St. These statutes provide that the taxes or fees assessed against the named insurance companies, in addition to all other taxes imposed upon them, shall be deposited in the respective special funds named in the statutes, to be used to defray the expenses of regulation of insurance companies writing certain kinds of insurance; and further provide that the annual taxes assessed and collected for such purposes shall depend upon the balance on hand at the end of each fiscal year in such special funds.

The court seems to have sustained the claim that Senate Bill 144 is in violation of Sec. 33 of Art. 3, because (1) it originated in the Senate; (2) it raises or provides money for the General Revenue Fund; and (3) as the result of transferring money from said two special funds, the insurance companies affected will be required to pay the State greater sums under Sec. 11-a of Art. 4682b and Art. 4902 than they would if no moneys were transferred from said special funds to the General Revenue Fund.

■ The bill is not a revenue bill. It merely provides for the transfer of portions of certain taxes, license fees, or assessments already levied, collected and deposited in certain special funds or accounts in the State Treasury under other existing statutes, to the General Revenue Fund. The Act does not authorize the collection of any more revenue than the statutes involved levied or assessed. It may result in requiring the taxing authorities to not take into consideration as large a balance in said special funds for the ensuing year as it would if the transfer of portions of such funds were not made. But the primary purpose of Senate Bill 144 was to provide for the disposition of surpluses in special funds and it is therefore not a bill "for raising revenue".

To be such a bill under Sec. 33 of Art. 3, it must levy taxes, and does not include a bill for other purposes even though it may incidentally create revenue. Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865; Stuard v. Thompson, Tex.Civ. App., 251 S.W. 277; Gieb v. State, 31 Tex. Cr.R. 514, 21 S.W. 190; United States v. James, Fed.Cas.No.15,464, 13 Blatchf. 207, 208; The Nashville, 17 Fed.Cas. page 1176, No. 10,023; Millard v. Roberts, 202 U.S. 429, 26 S.Ct. 674, 50 L.Ed. 1090; State v. Driscoll, 101 Mont. 348, 54 P.2d 571; Stith Petroleum Co. v. Department of Audit & Control of Indiana, 211 Ind. 400, 5 N.E. 2d 517; Anderson v. Ritterbusch, 22 Okl. 761, 98 P. 1002; Lang v. Commonwealth, 190 Ky. 29, 226 S.W. 379; 25 R.C.L., pp. 877, 878.

The court erred in holding that the title or caption to the Act violates Sec. 35 of Art. 3 of the Texas Constitution, in that it contains more than one subject, does not properly express the subjects so as to reasonably apprise the Legislature and affected public of the contents of the Act, and evidences the purpose not to transfer any special fund except the "Operator's and Chauffeur's License Fund." The one purpose or subject of the Act, as stated in the title or caption, was to require the State Treasurer to transfer "portions of certain special funds * * * and especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund." The one and only subject of the Act was the transfer of a portion or surplus of certain special funds in the State Treasury to the General Revenue Fund in the State Treasury. The Legislature and the affected public knew that the Legislature had from time to time required that certain taxes, license fees, etc., be deposited or set apart on the books of the State Treasury Department in certain statutory designated special accounts or funds. The caption to the Act specifically informed them that the Legislature was by the Act transferring to the General Revenue Fund a portion of certain special funds and especially a surplus in the Operator's and Chauffeur's License Fund. The Act especially dealt with the latter fund by amending Sec. 15 of Art. 3, Acts 47th Legislature as stated in Sec. 1, and then directed the transfer on September 1st of each year of all over $75,000 in such fund. Sec. 2 directed that on September 1st of each year there should be transferred from the seventeen named special funds to the General Revenue Fund that portion of the unexpended balance therein which exceeded an amount equivalent to the receipts deposited to the credit thereof during the preceding fiscal year. Any examination of the body of the Act would have apprised both the legislators and the affected public what special funds were being transferred to the General Revenue Fund. The Act does not contain eighteen subjects merely because it transfers a portion or surplus from eighteen special funds to the General Revenue Fund. The specific designation of these special funds was only incidental and necessary to the accomplishment of the one purpose or subject of the Act, the transfer of funds belonging to the State in special fund accounts to the "General Revenue Fund of the State of Texas." And it is manifest from the language, "portions of certain special funds," that the Legislature intended to transfer other special funds than the surplus from the Operator's and Chauffeur's License Fund. The title or caption to the Act fairly gave reasonable notice that the Legislature intended to place "portions of certain special funds in the General Revenue Fund", and that it was also "especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund." There would have been no purpose in using the language "portions of certain special funds," if the Legislature had intended to transfer only the surplus from the Operator's and Chauffeur's License Fund. Clearly there is no sound reason for elongating and unnecessarily burdening the title or caption to the Act by listing the eighteen special funds therein and again listing them in the body of the Act. The language, "portions of certain special funds," is entirely sufficient under the rule that a title need not contain "a full index of all the contents of the law." 39 Tex.Jur. 97.

"It would be burdensome if not intolerable to require that the title should be as full as the act itself. The word 'title' implies that no such requirement exists." Doeppenschmidt v. I. & G. N. Ry. Co., 100 Tex. 532, 101 S.W. 1080, 1081. See also Murray v. Reagan, 129 Tex. 206, 102 S.W.2d 202.

"It is, of course, a general rule that liberal construction will be indulged so as

to aid conformance of a title to constitutional requirements; e.g., if in the caption a purpose be but generally stated, that gives sufficient notice that all related and incidental matters may have attention in the body of the act; statements of the ultimate object will include warning of presence of details appropriate to achievement of that purpose." Bitter v. Bexar County, Tex.Com.App., 11 S.W.2d 163, 168. See also San Antonio & A. P. Ry. Co. v. State, 128 Tex. 33, 95 S.W.2d 680. As to singleness of subject in acts similar to the one in question, see Breen v. Texas & P. R. R. Co., 44 Tex. 302; Middleton v. Texas P. & L. Co., 108 Tex. 96, 185 S.W. 556.

■ The provisions of Sec. 35 of Art. 3 of the Constitution are complied with if the title of the Act fairly gives reasonable notice of the subject matter of the statute. The Constitution does not require that details of legislation be expressed in the title or caption, but only the ultimate object be shown. Stone v. Brown, 54 Tex. 330; Tilton v. Dayton Independent School District, Tex.Civ.App., 2 S.W.2d 889.

■ Sec. 2 of the Act does not violate Sec. 36 of Art. 3 of the Texas Constitution, providing that "no law shall be revived or amended by reference to its title; but in such cases the act revived * * * or * * * amended, shall be re-enacted and published at length." The trial court apparently held that Sec. 2 amends seventeen different statutes, or sections thereof, requiring that certain taxes, license fees, etc., shall be deposited in the respective special funds or accounts named, all relating to different subjects, and without re-enacting or publishing such statutes or sections thereof at length. In this connection it may be observed that several of these statutes directed the State Treasurer to set up some of the special funds named in Sec. 2 for certain purposes, and provide that any balance on hand shall be annually transferred to the General Revenue Fund. Others provide that certain portions of special funds shall go directly to the General Revenue Fund. Still others provide different means or methods for disposing of any balance in such special funds. The two special funds directly involved in the instant case are the "Motor Vehicle Insurance Division Fund" and the "Fire Insurance Division Fund," arising under Sec. 11-a of Art. 4682b, Vernon's Ann.Civ. St., and Art. 4902, Vernon's Ann.Civ.St.,

which provide that in making the annual levy of such taxes the balance on hand at the end of each fiscal year in such special funds shall be taken into consideration in making the assessments for the succeeding year.

We think Senate Bill 144 is an independent enactment or law, complete within itself, and states fully its purpose or provision without reference to any other statutes or laws. It therefore does not violate Sec. 36 of Art. 3 of the Constitution. The rule controlling this question is well stated in the case of Clark v. Finley, 93 Tex. 171, 54 S.W. 343, 344, wherein the court say:

"It is also insisted that the act in question is an amendment to various provisions of the Revised Statutes which prescribe the fees and fix the compensation of the officers named therein, and that it is, therefore, prohibited by section 36, of article 3 of the constitution. * * * A similar question was certified for the decision of this court in the case of Snyder v. Compton, 87 Tex. 374, 28 S.W. 1061, and in disposing of it the court said: 'It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule, legislation would in many instances be impracticable. This is especially the case in this state, where the existence of the common law is due to statutory enactment. The practice which it was the purpose of the provision * * * to prohibit was that of amending a statute by referring to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language and inserting in lieu thereof certain other words. It was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes. Similar provisions in other constitutions have been construed not to apply to implied amendments.' There is no attempt in the act in question to amend any law 'by reference to its title,' and hence it would seem that section 36 has no application."

To the same effect are Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680; Ellison v. Texas Liquor Control Board, Tex.Civ.App., 154 S.W.2d 322, error refused; Terrell v. State, 88 Tex.Cr.R.

599, 228 S.W. 240; Davis v. State, 93 Tex. Cr. R. 192, 246 S.W. 395.

The entire act here involved shows that the Legislature was dealing with the transfer of the surplus in eighteen special funds which it theretofore had required to be set up in the State Treasury for special purposes. Sec. 1 deals especially with the surplus in the Operator's and Chauffeur's License Fund, transferring all except an annual balance of $75,000 therein. Sec. 2 deals with the surplus in each of the seventeen special funds named, transferring that portion of the unexpended balance therein which exceeded an amount equivalent to the receipts deposited to the credit thereof during the preceding fiscal year. The entire Act from title to the emergency clause shows that the Legislature was dealing with the surplus in each of the eighteen special funds named, which it theretofore had required to be set up in the State Treasury for special purposes; and that the Legislature intended to transfer portions of each surplus to the General Revenue Fund; because it thought "it is an unsound practice to leave huge surpluses in Special Funds while the General Revenue Fund of the State of Texas shows a deficit." Thus, instead of attempting to reach this end or purpose by amending each of the numerous statutes which created the special funds, the Legislature provided "a complete act which, in its own setting, is fully understandable, and does not create, but begins with and is conditioned upon, an already existing (the existing surplus in each of the special funds named)—from whatever one of these laws it may arise, and regardless of their nature —and operates without need of reference whatever to them. These being the features of the statute, no infringement of section 36, art. 3 of the Constitution, is present." Consolidated Underwriters v. Kirby Lbr. Co., Tex.Com.App., 267 S.W. 703, 707.

█ The court erred in holding that Senate Bill 144 violates Sec. 38 of Art. 3 of the Texas Constitution, providing that "the presiding officer of each House shall, in the presence of the House over which he presides, sign all bills and joint resolutions passed by the Legislature, after their titles have been publicly read before signing; and the fact of signing shall be entered on the journals."

The photostatic copy of Senate Bill 144 filed with the Secretary of State bears the signature of John Lee Smith, President of the Senate, and the signature of Price Daniel, Speaker of the House, the certificate of the passage of the bill over the respective signatures of Bob Barker, Secretary of the Senate, and Clarence Jones, Chief Clerk of the House, the signature and approval of Coke Stevenson, the Governor of Texas, and the certificate of Sidney Latham, Secretary of State, showing that the enrolled bill was filed in his office on May 17, 1943. The certified bill also shows that it passed both the House and the Senate on May 11, 1943, as an emergency act, to become effective on September 1, 1943. Thus the undisputed facts, as evidenced by the certified photostatic copy of the bill in evidence, afford conclusive evidence of the passage of the bill in accordance with the quoted constitutional requirements, and may not be impeached by evidence aliunde.

There is no evidence that the Speaker of the House did not sign the bill in the presence of the House, after its title was publicly read. The evidence upon which the court concluded that Senate Bill 144 violates Sec. 38 of Art. 3 of the Constitution will be stated in substance. The Daily House Journal, of May 11, 1943, contained the bill, but did not show the signature of the Speaker of the House. The Journal Clerk of the House furnished the printer of the permanent or official Journal of the House with a copy of said Daily House Journal of May 11, 1943, which did not show the signature of the Speaker of the House. Later she sent a memorandum to the printer to insert in the Daily Journal of May 11, 1943, at a certain page under "Bills signed by the Speaker," reciting the caption or title to Senate Bill 144 as above quoted in this opinion. This memorandum was by the printer pinned to the copy for the permanent or official Journal of the House, which had not been printed at the time of the trial. The House Clerk testified that under House Simple Resolution No. 313, introduced in evidence, it was her duty to prepare the Daily House Journal and the permanent Journal of the House, the latter after the adjournment of the Legislature; and that she would not accept the permanent or official Journal of the House unless the printer inserted her instructions to show that the Speaker of the House signed Senate Bill 144; and that she determined the facts recited in the memorandum sent to the printer from the Daily Journal and her original notes of

May 11, 1943, showing the conference committee's report of Senate Bill 144 was made to the House and adopted by a record vote on that day, and from her examination of the original Senate Bill 144 filed in the office of the Secretary of State, showing the signature of the Speaker of the House thereon, although she had no independent recollection of his signing the bill in the presence of the House, after its title was read.

■ The foregoing evidence was not admissible under the "enrolled bill rule." The cases cited under our holding that the Act does not violate Sec. 30 of Art. 3, are likewise applicable to the requirements of Sec. 38 of Art. 3. That is, the rule is settled in Texas that an act of the Legislature, which bears the signature of the presiding officer of each House, the approval and signature of the Governor, and duly filed with the Secretary of State, cannot be impeached by evidence aliunde that there has been a failure of the Legislature to observe some constitutional requirements as to method of its passage through the Legislature. That such enrolled bill cannot be impeached by anything in or omitted from the Journal of either House was settled in the Williams-Taylor case, supra, wherein the court say:

" * * * In order to maintain that the journals should prevail over an enrolled bill duly signed and approved, it should be held that they are a more certain and reliable record of what occurred during the progress of the bill than the signatures of the presiding officers, which the constitution provides as the evidence of its passage. Such can hardly be said to be the fact. It should be assumed that the highest officer in the body, who is sworn to support the constitution, and upon whom is developed the important function of finally attesting the bill in [the] presence of the house over which he presides, will bring to the discharge of that duty that judgment and circumspection which the occasion demands. The journals are the work of clerks, perhaps hastily performed, and, as the official copies in this state, in some instances at least, will show, their reading is frequently dispensed with by vote. When such is the case, the journals are merely the work of the recording clerk, and even when read there is no assurance that the reading has lead to the correction of every error. * * *"

This rule renders immaterial any question as to what constitutes the "Journals" required to be kept by both Houses of the Legislature, or as to the manner of making or keeping them, or upon what clerical officer the duty to make such Journals or entries thereon rests. Under the "enrolled bill rule" the Journals shall never prevail over an enrolled bill duly signed and approved, because, as stated in the Williams-Taylor case, "when a bill has been so signed, and has been submitted to and [signed] by the governor, it was intended that it should afford conclusive evidence that [it] had been passed in the manner required by the constitution." See also Jackson v. Walker, 121 Tex. 303, 49 S.W. 2d 693.

■ Senate Bill 144 does not violate the equal protection of law clause of Sec. 1 of the 14th Amendment of the Federal Constitution. Nor does it violate Secs. 1 and 2 of Art. 8 of the Texas Constitution, requiring "equal and uniform" taxation and providing that "all occupation taxes shall be equal and uniform upon the same class of subjects." The trial court seems to have held that the Act violates Sec. 1 of the 14th Amendment on two grounds: 1) Because it diverts the special funds created under Sec. 11-a of Article 4682b and Art. 4902, thereby increasing the special taxes imposed for supervisory purposes so as to make same unreasonable and disproportionate to the service rendered; and 2) because the Act will, to the extent of the diversion of such special funds or taxes, result in increasing the taxes going into the General Revenue Fund of those paying the special funds, as compared with other insurance companies who pay only the occupation tax under Art. 7064 and make no payments to said special funds. Upon this second ground the court also held that the Act violates Secs. 1 and 2 of Art. 8 of the Texas Constitution, relating to equality and uniformity of taxation.

■ The foregoing state and federal constitutional requirements or provisions have no relation to Senate Bill 144. They relate or apply to taxation or revenue raising laws. Senate Bill 144 does not impose or provide for the imposition of taxes, or for other charges or assessments in the nature of taxes. It relates solely to the disposition of taxes or special funds already levied and collected under other statutes, and provides for the transfer of

portions thereof from the special fund accounts in the State Treasury to and for the use of the General Revenue Fund in the State Treasury. Our opinion and the cases above cited, holding that the Act does not violate Sec. 33 of Art. 3, providing that "all bills for raising revenue shall originate in the House," are applicable to the questions here presented. That is, the Act ·is not a revenue measure. The Act relates to the disposition or appropriation of taxes levied and collected by authority of other statutes and deposited in special accounts in the State Treasury. A portion of the surplus in such special fund accounts is appropriated or transferred to the General Revenue Fund for the payment of the general expenses of the government. The equal protection and the equality and uniformity of taxation clauses do not relate or apply to the expenditure of taxes. They were not intended to restrict "the power of the legislature to direct the purposes to which ·money collected by taxation might be expended, but was intended to secure · equality and uniformity in the mode and rate of assessment and taxation—the means employed to supply the treasury." State v. Mudgett, 21 Wash. 99, 57 P. 351; Kerr, County Auditor v. Perry School Tp. 162 Ind. 310, 70 N.E. 246; Cooley, Taxation, 4th Ed. Sec. 1813. Since Senate Bill 144 does not impose or levy the special tax or excise which goes into and creates the special funds in ·question, but only appropriates or transfers portions thereof to the General Revenue Fund for payment of the general expenses of the government, it does not violate the equal protection, or equal and uniform taxation clauses of the State and Federal Constitutions. The special funds in question belong to the State and the Act simply appropriates them for governmental purposes, and in consequence the Act no more relates to taxation than does any other appropriation of State Funds. Curryer v. Merrill, 25 Minn. 1, 33 Am.Rep. 450.

■ Moreover, since Senate Bill 144 is not a tax or revenue measure and imposes no tax, the attacks here made are necessarily against Sec. 11-a of Art. 4682b and Art. 4902, which impose the taxes, and under authority of which the special funds involved have been levied and collected. The validity of these statutes has not been attacked in this proceeding. No protest to the payment of these taxes has ever been made, and in consequence such attacks cannot be made at this time. But if through this proceeding to restrict the use of the special funds derived from the levies under said statutes, the two aforementioned attacks may be made, then neither attack is tenable.

■ It is clear that neither the equal protection nor equality and uniformity of taxation clauses of the State and Federal Constitutions are offended because of the claim that Senate Bill 144 will, to the extent of the diversion of the special funds, result in increasing the taxes going into the General Revenue Fund of those paying the special funds, as compared with other insurance companies who pay only the occupation tax under Art. 7064 and make no payments to said special funds. This is because companies who pay only the occupation tax imposed by Art. 7064 do not write the character of insurance, or engage in the same character of insurance businesses as do those companies who are required to pay the taxes going into the special funds, and imposed by Sec. 11-a of Art. 4682b and Art. 4902. The rule is settled in both state and federal jurisdictions that a state legislature has the power to make reasonable classifications of the subjects of taxation; that it may regard insurance companies as a separate classification for the purposes of taxation; and having right to so classify them, it may then subclassify insurance companies upon the basis of business done, or upon the basis of the type of policy written, or whether they write fire or other kinds of insurance. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896; Texas Company v. Stephens, 100 Tex. 628, 103 S.W. 481; Gulf States Utilities Co. v. State, Tex.Civ.App., 46 S.W.2d 1018, error refused; Dallas Gas Co. v. State, Tex.Civ.App., 261 S.W. 1063, error refused; Stuard v. Thompson, Tex.Civ.App., 251 S.W. 277; Solon v. State, 54 Tex.Cr.R. 261, 114 S.W. 349; Northwestern Mut. Life Ins. Co. v. Wisconsin, 247 U.S. 132, 38 S.Ct. 444, 62 L. Ed. 1025; Massachusetts Bonding & Ins. Co. v. Chorn, 274 Mo. 15, 201 S.W. 1122; 16 C.J.S., Constitutional Law, § 520, pp. 1048, 1049; Mims v. City of Fort Worth, Tex.Civ.App., 61 S.W.2d 539; Orient Ins. Co. v. Daggs, 172 U.S. 557, 19 S.Ct. 281, 43 L.Ed. 552; 12 C.J. 1161, 1162, § 898; 16 C.J.S., Constitutional Law, § 511; Norris v. City of Waco, 57 Tex. 635.

Arts. 4682b and 4902 provide that the taxes thereby imposed are to be in addition

to the taxes imposed upon the insurance companies by Art. 7064, and said statutes impose the additional taxes so as to bear equally and uniformly upon all companies of the classification.

The holding is not sustained that the transfer of the surpluses from the special funds necessarily increases the levies for supervisory purposes unreasonably and disproportionately to the service rendered. This holding seems to be based upon the conclusion that the taxes going into the special funds created by Arts. 4682b and 4902 were exacted under the exercise of the police power only and for supervisory purposes; and that under the constitutional inhibitions urged the Legislature had no power to make levies substantially in excess of the costs of supervision.

The taxes going into the special funds were not referable to an exercise of the police power solely. The Legislature had the right to impose the taxes under its power of taxation and for revenue purposes. They were levied as an excise upon the right to engage in or to carry on certain insurance businesses. In consequence, the question of whether they exceeded the costs of regulation is not material. The fact that the Legislature permitted large surpluses to be accumulated in these funds over a period of years would indicate that the levies were intended for the purpose of raising revenue as well as for costs of regulation. Such excessive levies would under the rule applicable to such matters show that the Legislature intended to impose them under its power of taxation and not under the exercise of the police power for regulation purposes only. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896; Gundling v. City of Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725.

We are also of the view that whether such special funds were exacted under the police power or under the power of taxation, those who paid the taxes are not entitled to have them applied or used exclusively for paying the costs of supervision by the Board of Insurance Commissioners only. The undisputed evidence showed costs of court, of the Attorney General's Department, and other departments of government, in aid of the regulation of such insurance business in the interest of the public welfare, were paid out of the General Revenue Fund of the State. City of Fort Worth v. Gulf Ref. Co., 125 Tex.

512, 83 S.W.2d 610; Ex Parte Gregory, 20 Tex.App. 210, 54 Am.Rep. 516. Moreover, as already pointed out, the constitutional inhibitions sought to be here invoked apply only to tax impositions made to supply the Treasury and not to the expenditures of the funds derived from such levies or impositions.

The two remaining holdings of the trial court relate to the character of the special funds levied under the foregoing statutes. They are so closely akin that we will discuss them together.

The first of these holdings is not sustained that the special funds arising under Arts. 4682b and 4902 have been allocated by law and the Legislature to the supervision of certain insurance business so as to preclude their being diverted or transferred to the general revenue fund as is attempted by Senate Bill 144, no express or implied repeal of such purpose being contained in the bill. Nor is the holding tenable that Senate Bill 144 violates Sec. 7 of Art. 8 of the Texas Constitution, providing that: "The Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury."

The Motor Vehicle Insurance Fund originated in 1937, under Sec. 2 of Chap. 335, Acts 45th Legislature, the special fund being provided for by Sec. 11-a of Art. 4682b, as shown by Vernon's Annotated Civil Statutes. It provides that such fund shall "be used for the sole purpose of administering this Act," the "tax * * * to be in addition to all taxes now imposed, or which may hereafter be imposed," and "should there be an unexpended balance at the end of any year in said fund, the Board of Insurance Commissioners shall reduce the assessment for the succeeding year so that the amount produced and paid into the State Treasury together with the unexpended balance in the Treasury will not exceed the amount necessary for the current year to pay all expenses of maintaining the Motor Vehicle Division of the Board of Insurance Commissioners."

The Fire Insurance Division Fund originated in 1920, the special fund here involved arising under Art. 4902, as amended by Acts of the 45th Legislature. Under its terms the special fund created was to be kept separate from other funds, to be used only for the purposes of carrying out the provisions of the Act, and providing that if there was an unexpended balance in any

year, the said Board shall reduce the assessment for the ensuing year so that the unexpended balance and the amount paid will be sufficient to pay all expenses for the current year and not exceed the amount necessary to pay all expenses for maintaining the Fire Insurance Division of said Board, and so that no deficit shall occur in the special fund.

 Other terms of Arts. 4682b and 4902 provide that the taxes levied shall be computed upon a certain percentage of gross premiums. Pursuant to these statutes the Board has annually levied the taxes with the result that large balances were left in the special funds on September 1, 1943, the date Senate Bill 144 became effective. The Motor Vehicle Insurance Division Fund balance was about $125,000, and the Fire Insurance Division Fund balance was about $245,000. With these two and the sixteen other special funds named Senate Bill 144 deals. It does not levy the taxes going into the special funds, but merely appropriates or directs the expenditure of the several special fund surpluses derived from taxes levied and collected under existing statutes. It is an independent act, complete within itself, appropriating and directing the expenditure of taxes levied and collected under existing laws for the payment of the expenses of the government. The taxes derived from these statutes could have been paid into the General Revenue Fund originally, and the supervision expenses paid out of such fund. Those paying the taxes have no such vested right or interest as would prohibit the Legislature from appropriating portions of the surpluses to the general expenses of government.

 Sec. 6 of Art. 8 of the Texas Constitution provides that "no money shall be drawn from the Treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years." The mere fact that one Legislature appropriates or directs that taxes levied and collected for the next succeeding biennium be used for a special purpose, does not deprive a subsequent Legislature of the right to appropriate and direct the expenditure of any portion of the taxes not needed for the special purpose. Subsequent Legislatures have so dealt with the taxes going into the special funds created by these two statutes. In the fiscal year ending August 31, 1941, the Legislature directed that $2,000 be transferred from the Fire Insurance Divi-

sion Fund to the General Revenue Fund, and in the fiscal year ending August 31, 1942, the sum of $3,250 was similarly transferred, and the sum of $3,250 was likewise transferred in the fiscal year ending August 31, 1943. By similar legislation $500 was transferred from the Motor Vehicle Insurance Division Fund in the fiscal year ending August 31, 1942, to the General Revenue Fund, and a like amount was transferred in the fiscal year ending August 31, 1943.

 The rules are settled that the power of the Legislature to enact laws within constitutional limitations is a continuing one; that the exercise of the power once does not exhaust it; and that what one Legislature can establish by enactment, another can alter or abolish, except to the extent that rights of property acquired by private persons may limit the power. Texas & N. O. Ry. Co. et al. v. Miller et al., 60 Tex.Civ.App. 627, 128 S.W. 1165, error refused, affirmed 221 U.S. 408, 31 S.Ct. 534, 55 L.Ed. 789; Texas & N. O. Ry. Co. et al. v. Gross et al., 60 Tex.Civ.App. 621, 128 S.W. 1173, error refused, affirmed 221 U.S. 417, 31 S.Ct. 536, 55 L.Ed. 796; People v. Coler, 173 N.Y. 103, 65 N.E. 956, 957, 958; 12 C.J. 806, § 238; 16 C.J.S., Constitutional Law, § 106; Cooley, Constitutional Limitations, 8th Ed., 246 et seq.

 Senate Bill 144 does not violate Sec. 7 of Art. 8 of the Constitution, providing that "the Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury." This is because the special funds created by Arts. 4682b and 4902 are not the kind of "special fund" referred to in the Constitution. No constitutional "special fund" is here involved. The special funds here involved are creatures of the statutes. They arise out of taxes which could have been paid into the General Revenue Fund in the first instance. They arise under the power to levy taxes for the maintenance of governmental agencies as well as for general governmental purposes. The taxes going into the special funds in question are not dedicated or allocated either by the Constitution or statutes to any "special fund" established by the Constitution, but are taxes which would have come into the General Revenue Fund had the statutes not placed them in the special accounts or funds. In considering the meaning of "any special fund" as used in the Constitution,

the Supreme Court held in Brazos River Conservation & Reclamation District v. McCraw, 126 Tex. 506, 91 S.W.2d 665, 674, as follows:

"The seventh objection of the Attorney General, that the act before us attempts to divert from its purposes a special fund which ought to come into the Treasury of the state, in violation of section 7, article 8, of the State Constitution, is without merit. The act before us makes no attempt to divert any special fund which may or ought to come into the Treasury. The taxes allocated to the district are taxes which would come into the general fund of the Treasury, and not into any special fund. 59 Corpus Juris, p. 232, § 378. There are various special funds named in the Constitution, such as the school fund, etc., and the purpose of section 7, article 8, was to prevent their diversion. The special funds, of course, cannot be diverted; but the provision named had no application to the general fund of the Treasury, or which might come into the Treasury. 59 Corpus Juris, p. 232, § 378; 61 Corpus Juris, p. 1520, §§ 2234–2235; Collins v. Humphrey, 181 Ark. 609, 27 S.W.2d 102; McKay Texas Const. Debates, p. 311."

Should it be held, however, that the special funds in question come within the meaning of the term "special fund" as used in Sec. 7 of Art. 8 of the Constitution, then the burden was upon appellees to show that Senate Bill 144 diverted them from the purposes for which they had been created. This they did not do. The undisputed evidence showed that the costs of services of other divisions of the Insurance Department, the courts, the Attorney General, and other departments of the government in aiding the Board in the regulation of the insurance businesses described in Arts. 4682b and 4902 were paid from other funds, and particularly the General Revenue Fund. These statutes provide that the taxes collected were "to be used for the sole purpose of administering this Act," or were to "be held and expended for the purpose of carrying out the provisions of this Chapter." As hereinabove stated, the Legislature has directed the transfer of small portions of these special funds to the General Revenue Fund since August 31, 1941. These transfers related merely to expenses of the Attorney General, and no transfer has ever been made to cover any of the general administrative expenses to the General Revenue Fund since the establishment of the two special funds in question, although such general administrative expenses have been occurring since the statutes were enacted, and although the large surpluses have been building up over the course of years since the enactment of the regulatory statutes. No showing was made that the amounts transferred from the special funds were unreasonably or disproportionately in excess of the general administrative services rendered. The rule is settled that taxes or assessments which may be imposed solely for the purposes of regulation or enforcement may take into consideration such items of general administrative costs, and that provision may be made for the discharge or payment of such expenses out of the taxes or assessments levied. City of Fort Worth v. Gulf Ref. Co., supra; Ex parte Gregory, supra; Atkins v. State Highway Dept., Tex.Civ. App., 201 S.W. 226. And under the rule that an act of the Legislature should not be declared unconstitutional unless it clearly appears to be so, and that every reasonable doubt as to its validity must be resolved in favor of the act, it will be presumed that the Legislature intended by Senate Bill 144 to reimburse out of the special funds the General Revenue Fund for the sums expended for the purposes for which the special funds were created and held. Smith v. Patterson, 111 Tex. 535, 242 S.W. 749.

The judgment declaring Senate Bill 144 to be unconstitutional is set aside, and the injunction restraining its enforcement is dissolved.

Judgment set aside; injunction dissolved.